1              IN THE UNITED STATES DISTRICT COURT

2             IN AND FOR THE DISTRICT OF DELAWARE

3

    CONTINUOUS COMPOSITES, INC.,    )
4                                   )
    --------------------Plaintiff, )
5                                   ) Case No.
         vs.                        ) 21-CV-998-MN
6                                   )
    MARKFORGED, INC.,               )
7                                   )
    --------------------Defendant. )
8

9           TRANSCRIPT OF MOTION TO STRIKE

10

11         MOTION TO STRIKE had before the

12    Honorable Laura D. Hatcher, U.S.M.J., via

13    teleconference on the 4th of August, 2023.

14

15                  APPEARANCES

16         RICHARDS, LAYTON & FINGER, P.A.
              BY:  GRIFFIN SCHOENBAUM, ESQ.
17
                      -and-
18
           LEE & HAYES PLLC
19            BY:  HALA MOURAD, ESQ.
                  RICHARD UBERTO, JR., ESQ.
20
                      -and-
21
           ORRICK HERRINGTON & SUTCLIFFE LLP
22            BY:  CHRISTOPHER HIGGINS, ESQ.

23                          Counsel for Plaintiff

24

25

1          (Appearances continued.)

2

3               MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                    BY:  RODGER SMITH, II, ESQ.

4                          -and-

5          GOODWIN PROCTER LLP
                BY:  CALVIN WINGFIELD, ESQ.

6                    JACQUELINE BOVA, ESQ.

7                          Counsel for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | THE COURT:  Good afternoon, counsel. |
| 2 | This is Laura Hatcher.  This is a |
| 3 | teleconference in *Continuous Composites, Inc.,* |
| 4 | *versus Markforged*, Civil Action Number 21-998. |
| 5 | Do I have all counsel on the line? |
| 6 | UNIDENTIFIED SPEAKER:  Yes, Your |
| 7 | Honor. |
| 8 | THE COURT:  Very good. |
| 9 | Who is appearing on behalf of Plaintiff |
| 10 | starting with our Delaware lawyer first, |
| 11 | please? |
| 12 | MR. SCHOENBAUM:  Good afternoon, Your |
| 13 | Honor.  This is Griffin Schoenbaum from |
| 14 | Richards, Layton, and Finger on behalf of |
| 15 | Plaintiff Continuous Composites.  Also on the |
| 16 | line are my co-counsel Hala Mourad and Richard |
| 17 | Uberto from Lee and Hayes and Christopher |
| 18 | Higgins from Orrick, Herrington, and Sutcliffe. |
| 19 | And with Your Honor's permission, Mr. Higgins |
| 20 | will be making presentation for Plaintiff |
| 21 | today. |
| 22 | THE COURT:  Very good.  Thank you, |
| 23 | and welcome to you all. |
| 24 | Who is on the line on behalf of |
| 25 | Defendants starting with Delaware lawyers, |

1    please?

2          Who is on the line on behalf of

3    Defendants starting with the Delaware lawyers,

4    please?

5          MR. SMITH:  My apologies, Your Honor.

6    Rodger Smith.  I had you on mute somehow.  It's

7    Rodger Smith and Morris Nichols for Defendant

8    Markforged.  I have with me co-counsel from

9    Goodwin Procter Calvin Wingfield and Jacqueline

10   Bova.

11         THE COURT:  And who will be making

12   the argument today, Mr. Smith.

13         MR. SMITH:  I believe Mr. Wingfield,

14   be I could be wrong about that.  I'll let them

15   speak.

16         MR. WINGFIELD:  That's right.  Calvin

17   Wingfield, Your Honor.

18         THE COURT:  Fantastic.  Good

19   afternoon and welcome to you all.

20         We are here on cross-motions to strike

21   portions of the expert report.  I'd like to

22   begin with Plaintiff's motion to strike, but

23   before I do that, can I ask the parties to just

24   let me know how you proposed to proceed?  And

25   by that I mean, do you intend to argue your

1    whole motion at once and let the other side

2    respond, or would you prefer to go issue by

3    issue?

4         MR. HIGGINS:  Your Honor, this is

5    Chris Higgins for the plaintiff.  I'm fine

6    going either way.  I can go through all of our

7    arguments.  There are, I believe, six of them.

8    Or we can go one argument at a time back and

9    forth.  I'm fine either way.  Whichever way you

10   prefer.

11        THE COURT:  Mr. Wingfield, any

12   preference by you?

13        MR. WINGFIELD:  I think it probably

14   makes sense to do issue-by-issue just so that

15   we get the points, but I'm fine either way.

16        THE COURT:  I'm fine with that, and I

17   hear Mr. Higgins saying he also doesn't have a

18   tremendous preference.  We'll go ahead and do

19   it that way.

20        One other preliminary question before we

21   start, Mr. Wingfield and Mr. Higgins, just to

22   be clear, make sure we're all on the same ball

23   field here, does everyone agree that the

24   so-called *Pennypack* factors are what applies to

25   and governs the motions to strike here?

1          MR. HIGGINS:  For Plaintiff, Your

2      Honor, I agree that applies, and I was also

3      going to address at the beginning because we

4      are dealing with issues that were not disclosed

5      during fact discovery and their contentions,

6      this district also applies the standard for

7      leave to amend, which brings in diligence, and

8      then uses that to show additional prejudice in

9      the *Pennypack* factors.  While the *Pennypack*

10     factors apply, this additional test, because

11     they didn't move to amend and that's what this

12     applies to, those factors are also relevant.

13          THE COURT:  Okay.  Any response by

14     Mr. Wingfield on this point before we move on?

15          MR. WINGFIELD:  No, Your Honor.  I

16     agree the *Pennypack* factors apply.

17          THE COURT:  All right.  Very good.

18     Mr. Higgins, we'll turn to you.  We'll start

19     with your motion to strike, which is DI 142.

20          MR. HIGGINS:  Thank you, Your Honor.

21     Before I jump into the first issue here, which

22     is going to be the polymer, I wanted to make

23     one note here, and it's that we're not -- what

24     we're going to see today and what I'm going to

25     talk about with all of these issues is a common

1    theme, and that is a repeated pattern by

2    Defendant of not complying with the scheduling

3    order and orders entered in this case by Judge

4    Noreika.  And I think what will exemplify this

5    the most is when we get to the invalidity issue

6    at the end because it's not just a

7    nondisclosure.  It's purposeful withholding.

8         Where I'll start first is on the

9    noninfringement theories that they proposed in

10   these new constructions, and they don't fare

11   any better because they simply blew through

12   deadlines and disregarded orders.  And when you

13   look at each of these issues separately, as

14   we're going to just walk through, they touch on

15   the lack of diligence and the prejudice.

16        But I think when you look at these all

17   together and add all of this up, this repeated

18   pattern and disregard of the schedule in in

19   case and trying to jam everything into expert

20   reports, when you add that all together, that

21   really amounts to a severe prejudice for the

22   plaintiff.

23        With that in mind, and as I mentioned, I

24   will talk about lack of diligence because what

25   Markforged failed to do here is amend -- move

1    to amend their contentions, whether it's

2    invalidity or noninfringement.  When that's the

3    case, the Court looks to, is there diligence?

4    What was the surprise?  Could they have

5    discovered this information earlier?  And when

6    did they possess it?  Those factors I'll talk

7    about also, and then I'll touch on the

8    prejudice that gets to the *Pennypack* factors.

9         With that in mind, I want to start with

10   the first issue, and I'll go in the order that

11   we have it in our brief, which was docket entry

12   number 142 to try to keep things going in

13   order.  And that relates to a term in Claim 2

14   of the asserted '660 patent, and that's the

15   term "polymer."  And in Plaintiff's view, Judge

16   Noreika already issued an order on this issue.

17   And Markforged cannot raise new claim

18   constructions for this term "polymer" as well

19   as its related term that we'll talk about next.

20        This is in her order which is docket

21   entry number 99.  In order number 99, Judge

22   Noreika, after she received the parties' joint

23   claim construction chart that had 20 terms in

24   it, she ordered the parties to reduce that list

25   to only ten terms that would be argued at the

1    hearing.  She specifically said any decision on

2    any other terms in that list is denied, and as

3    to the terms that weren't going to be argued,

4    she said any terms in that joint chart, and she

5    specifically cited to DI 94 in her order, any

6    terms in that chart that haven't been

7    addressed, the parties may be able to argue

8    during summary judgment.

9        But the problem for Markforged -- and

10    this is their whole basis for their opposition,

11    is that they proposed this term.  The term

12    "polymer" is not in the joint claim

13    construction chart, DI 94, which is cited by

14    Judge Noreika.  It was only after Judge Noreika

15    ordered the parties to reduce this list and

16    submit an amended chart that identified the ten

17    terms that we would argue at the hearing that

18    Defendant tried to add this new term, and we

19    objected to it.  So it's sitting at the end of

20    some other filing.  It is not in DI 94 in the

21    joint chart.  Those are the only terms that

22    Judge Noreika said you may be able to argue

23    later.

24        This term wasn't even in front of her at

25    that time when she made this order, and they

1    didn't raise this.  And in our view in order to

2    even get a construction for this term or have

3    it considered, Defendant needed to seek leave

4    from are Judge Noreika and seek leave from her

5    order.  They didn't do that.  What we saw was

6    them trying to jam this into their expert

7    report later, and the reason for may well be

8    that Judge Noreika made comments at the hearing

9    telling the parties that any of these terms on

10   the joint chart, DI 94, we should not be able

11   to expect to argue later.  There were too many

12   terms.

13        Again, "polymer," this term Markforged

14   tried to argue in the expert report wasn't on

15   the list.  It wasn't in front of her.  So

16   Markforged threw a plan B together and threw it

17   in their expert report.  In our view, that's

18   going against Judge Noreika's order, and that

19   can't be a proper course of action.  But

20   there's more to it than that even, just going

21   beyond there.

22        THE COURT:  Let me ask you this:

23   Look, I absolutely appreciate your argument and

24   certainly understand what you're saying with

25   respect to the order at -- what is it? -- DI 94

1    and then the subsequent amended charts or

2    whatever it is at DI 101.  What was it that the

3    parties intended with these claims reserved for

4    dispositive motion practice included on page

5    nine of DI 101?

6           MR. HIGGINS:  I'm sorry, Your Honor.

7    I didn't catch the end of your question.  I

8    apologize.  I heard, "What did the parties

9    intend."

10          THE COURT:  Let me try again.  What

11   did the parties intend with the claims that

12   were reserved for dispositive motion practice

13   on page nine of DI 101?

14          MR. HIGGINS:  The terms that were

15   left over in that chart -- and this was

16   addressed at the hearing, as I was alluding to.

17   Those terms were reserved later.  If Judge

18   Noreika allowed it, it could possibly be argued

19   at summary judgment.  The one term that's added

20   in there that Markforged added is "polymer,"

21   which we have an objection to in the footnote.

22   That was added after Judge Noreika made this

23   ruling.  It wasn't part of these terms that she

24   said could be argued later in summary judgment.

25   This was something added after she made her

1    ruling, so it's not part of that, in our view.

2              THE COURT:  I appreciate that.  And

3    how long after her order that you're

4    referencing did this DI 101 come around?

5              MR. HIGGINS:  I believe it was a

6    couple days after because we had to submit this

7    joint chart and then that's when Markforged

8    tried to add it.  We objected to it, and at

9    that time we objected to it, Markforged's

10   noninfringement contentions didn't have any

11   argument on this either.  So in our view, this

12   was kind of something that's doubly waived.

13   They're not going to be able to argue it, and

14   they needed to seek leave from Judge Noreika to

15   do so.  There's a two-prong basis here that it

16   still wasn't even in their contentions, and

17   then they tried to add it here.

18              THE COURT: .  All right.  I did

19   also -- I believe you referenced the transcript

20   in your letter, so I did pull and read the

21   transcript of the Markman hearing, and

22   certainly I think one could fairly say that

23   Judge Noreika was not happy to hear that there

24   might be additional terms requiring

25   construction, claims requiring construction,

1    but it did seem to me that properly or

2    improperly, Defendant, counsel for the

3    defendant, specifically pointed to "polymer" as

4    one that it might argue needed construction.

5    Do you agree with that?

6              MR. HIGGINS:  I agree that that term

7    was mentioned, and that's why the other part of

8    where I was heading is, even if you buy into

9    the -- that they brought this up at the hearing

10   and it should be construed, we still have the

11   issue that it was not in their final

12   noninfringement contentions.  So the whole --

13   let's say the Court construes it.  Their

14   noninfringement argument based on this would

15   still be waived and struck from Dr. Gall's

16   report.

17             THE COURT:  I understand your

18   argument.  Is there anything else you'd like to

19   say on this point?

20             MR. HIGGINS:  I do want to add one

21   other point.  This goes to the prejudice point

22   of the *Pennypack* factors, and I want to make

23   this brief.  We filed a motion for summary

24   judgment of infringement based on this claim,

25   and under our construction of this term,

1    there's not much of a dispute there's

2    infringement here.  Markforged raised this

3    issue, and along with their opposition paper,

4    they filed a several-page declaration from one

5    of their employees on this issue that deals

6    with the "polymer" term.  So they seem to be

7    taking this further and further as they go

8    along.  This wasn't even in Dr. Gall's report.

9          But they're taking things that, had they

10   disclosed this during fact discovery, I

11   definitely would have wanted to depose this

12   person and ask them questions about what he's

13   now trying to come up with and save them from

14   infringement, but we're at the point where we

15   filed for -- summary judgment expert reports

16   are done.  There's no opportunity to cure that

17   delay at this point now that they've put in

18   this declaration with their summary judgment

19   brief.  So I wanted to add that fact that goes

20   to our prejudice, that they've taken this

21   further and further as we've gone along, and

22   there's no restraint on what they're trying to

23   add.

24         With that, I'll stop there unless you

25   have any questions, Your Honor.

1          THE COURT:  The only comment I have

2     is that declaration with summary judgment

3     papers is not really -- I assume you would have

4     raised that with Judge Noreika in your response

5     to summary judgment, and I don't really know

6     that -- thanks for letting me know about it,

7     but I don't know that there's anything I can

8     consider with respect to that at this hearing.

9          MR. HIGGINS:  Yes, Your Honor, and

10    we're not asking for anything for you to do

11    with respect to that declaration at this point.

12         THE COURT:  Very good.  Wanted to

13    make sure I was tracking what you were saying.

14         Mr. Wingfield, let me hear from you on

15    this.

16         MR. WINGFIELD:  Thank you, Your

17    Honor.

18         I'll first start with correcting some of

19    the history here with the term "polymer."  As

20    you mentioned, there's a DI 101, which is an

21    amended joint claim construction chart where

22    Markforged identified "polymer" along with

23    eight other terms terms reserved for

24    dispositive motions.  That was pursuant to the

25    Court's order December 6, 2022, DI 99, which

1          Mr. Higgins referred to.

2               As you mentioned, also, on pages 6

3     through 7 of the Markman hearing transcript, we

4     identified "polymer" specifically as a term

5     that Markforged would be reserving for

6     dispositive motions.  During discussion with

7     the Court, we identified terms that were listed

8     here -- the nine terms that are listed in DI

9     101 that, based on the parties' discussions

10    earlier that day, appear to be no longer at

11    issue for the Court to resolve because Judge

12    Noreika issued the first order on December 6th

13    to ask the parties to narrow down the terms for

14    construction.

15               In doing that, Markforged identified a

16    term that was lingering out there and should be

17    construed.  We identified the term "polymer."

18    We said it should be given the same

19    construction as a related term that was being

20    presented to the Court for construction at the

21    briefing in the Markman hearing.

22               Following that, Your Honor, the parties

23    served supplemental final infringement

24    contentions on December 21st.  The parties had

25    an agreement that because fact discovery --

1    that -- the backup positions all occurred after

2    the parties served final contention that they

3    would be amending or supplementing those final

4    contentions to incorporate the fact deposition

5    testimony.

6        Those contentions were served on December

7    21st, after Markforged identified "polymer" as

8    a term for construction, after Markforged set

9    that term should be given the same construction

10   adds the term "primary material," which

11   Markforged had identified at the beginning of

12   the claim construction process, and even before

13   then.

14       We identified it in October 2021 in a

15   letter to Continuous Composites to inform them

16   that none of the materials that are used by our

17   products are a curable liquid material.  The

18   infringement dispute here that's at issue for

19   the term "polymer" is whether our material is a

20   curable liquid material.  That's the dispute

21   that it Continuous Composites has been aware of

22   since three months after this lawsuit was

23   filed.

24       But the reason Markforged has a companion

25   or corollary motion to strike on this term is

1    because Continuous Composites, though they knew

2    Markforged's proposed construction of

3    "polymer," though they had already deposed our

4    witnesses about "curable liquid" because that

5    construction was out there during the fact

6    deposition, did not include a construction --

7    sorry -- infringement theory on "curable

8    liquid."  Markforged had a noninfringement

9    position there.

10            THE COURT:  Let me ask this.  I

11   apologize for interrupting you.  Mr. Higgins

12   said that this wasn't in your final

13   contentions?  Is that true?  If so, why?

14            MR. WINGFIELD:  Your Honor it was not

15   in the final contentions which we served in

16   November, but they were in the supplemental

17   final contentions which were served in

18   December.  And the parties had agreed because

19   fact deposition testimony or all fact

20   depositions occurred after they served final

21   contentions in November that we would be

22   supplementing our contentions at a later date,

23   in December, the last day of fact discovery, to

24   bring in any additional evidence regarding the

25   issues in dispute that came to light during the

1    fact depositions.

2         So the final -- in the supplemental final

3    contentions, both parties had an opportunity to

4    address this claim construction, and that's our

5    position.  By the close of fact discovery, this

6    construction was a part of the case.  It was

7    reserved for dispositive motions, and that's

8    where we are today.

9         And then, Your Honor, because Mr. Higgins

10   raised it as additional prejudice here, the

11   fact declaration that was submitted with our

12   opposition to their summary judgment motion

13   raises an issue that was not in the responsive

14   issue that was not in Dr. Oswald's expert

15   report, which goes to what the term "polymer"

16   means and whether the materials that Markforged

17   uses fits the particular definition that was

18   offered in their claim construction brief.

19   That was something that had not been discussed

20   by either party prior to their summary judgment

21   motion, and we responded to it, and they'll

22   have an opportunity to respond in the reply

23   brief.

24        Similarly, with respect to the

25   noninfringement position that Markforged and

1       Dr. Gall put forth based on this definition of

2       "polymer," we don't see any prejudice there

3       either because, one, Dr. Oswald was aware of

4       the construction, and he addressed it in his

5       opening expert report.  He received Dr. Gall's

6       response and then responded to that in the

7       final report.  So any prejudice has been cured

8       because Continuous Composites had the

9       opportunity to address the construction, to

10      address Markforged's noninfringement positions

11      concerning it, and even to depose Dr. Gall.

12          And they filed summary judgment based on

13      a longer term, not specifically the term

14      "polymer," but a longer claim construction term

15      that -- a limitation that includes that word,

16      but they didn't file for summary judgment based

17      on Markforged's proposed construction of

18      "polymer."  Instead, they filed for summary

19      judgment if the Court decides not to adopt

20      Markforged's construction based on the plain

21      and ordinary meaning of that term.

22              THE COURT:  Didn't you move to strike

23      that portion of the plaintiff's expert report?

24              MR. WINGFIELD:  I'm sorry.  Which

25      portion?

```
 1                    THE COURT:  The part about "polymer"
 2         that you were just saying --
 3                    MR. WINGFIELD:  We did, yes.
 4                    THE COURT:  Would you agree,
 5         certainly, that if I were to permit "polymer"
 6         to stay in Defendant's report, you would
 7         withdraw that objection and that motion to
 8         strike?
 9                    MR. WINGFIELD:  There's a difference,
10         Your Honor, so not necessarily.  The reason for
11         it is that Defendants provided notice to
12         Continuous Composites about the construction of
13         "polymer," and Continuous Composites still
14         didn't address it in their contention.  And
15         this was one issue we had for our motion to
16         strike is the evidence being used to suggest
17         our material is curable, which, during the
18         Markman hearing, Continuous Composites'
19         counsel --
20              I know we're not on our motion yet, but
21         we view this additional evidence about whether
22         the material used by Markforged's printers to
23         be curable to be, essentially, receiving of a
24         concession that Continuous Composites made at
25         the Markman hearing that they have given up on
```

1    the idea that Markforged's material is curable,

2    and that led to situations of dismissal of

3    several patents that were in the case.

4         And then the surprise here, Your Honor,

5    that in the expert report, we see an

6    infringement theory under our construction

7    alleging that our material is curable based on

8    an article that was never presented during fact

9    discovery.  That was just unduly --

10        THE COURT:  I think we're going a

11   little too far afield.  I'll say this:  I'm not

12   sure even what I heard that I'm persuaded by

13   your argument, and it's not a concession I

14   would have made, but I won't ask you to do that

15   now.

16        Let me say this:  Is there anything that

17   you have that you'd like to add on the

18   plaintiff's motion to strike "polymer" before I

19   turn it back to Mr. Higgins for the last word

20   on this specific issue?

21        MR. WINGFIELD:  No, Your Honor.

22   Nothing further for me.

23        THE COURT:  Thank you, Mr. Wingfield.

24        Mr. Higgins.

25        MR. HIGGINS:  I want to respond

1    quickly to one point, Your Honor, and that's

2    when we were discussing the final

3    supplementation on the last day of fact

4    discovery, it was specifically limited to

5    adding in citations to deposition testimony.

6    We actually told Markforged -- I'm reading from

7    co-counsel's second e-mail -- any arguments

8    that could have been disclosed by the final

9    contention dates regarding invalidity or

10   noninfringement will not be permitted.  And

11   adding in a new construction for a term and a

12   new noninfringement theory, that's not citing

13   to deposition testimony.  And, clearly, there

14   was no deposition testimony to cite to because

15   that's why they have this new declaration.

16        Mr. Wingfield was saying there was some

17   agreement among the parties that they could add

18   in a new theory now and then add a declaration

19   and after dispositive motions are done.  That

20   is not something we agreed to.  The agreement

21   was to add in citations, which is routinely

22   done in these cases.  A deposition occurred

23   after contentions.  You want to add citation.

24   That's fine.  But in no way -- and we

25   specifically didn't agree to add in an entirely

1      new legal theory.

2              And this is Markforged's own material.

3      They made this argument with respect to other

4      claims that used a different term.  They did

5      not make this argument with respect to this

6      term.  That was a choice they made.  They tried

7      it on the very last day of fact discovery, long

8      after contentions -- the joint claim chart was

9      due.  It was way too late.  It was an

10     afterthought by then, and, in our view, they

11     shouldn't be permitted to benefit from this.

12              THE COURT:  Understood.  I appreciate

13     your arguments, Mr. Higgins and Mr. Wingfield.

14          I think what I'd like to do is just

15     continue to proceed on through.  We'll march

16     right along here as efficiently as possible,

17     and then my goal is to give all folks here on

18     the line a ruling at the end of the argument.

19          I do want to flag one issue before we

20     proceed, and there's a balance here.  I want to

21     make sure that the parties are afforded the

22     time that they need to argue whatever positions

23     they need to assert, but I do want to flag that

24     I believe we are -- our court reporter may have

25     another obligation at 4:00, so let's keep that

1   in mind as we go forward.  And if we are not

2   able to finish today, we'll pick this up on

3   Monday or the soonest possible date we can, but

4   I want to flag that for counsel before we move

5   on.

6           Let's move on, Mr. Higgins.  Your next

7   argument, please.

8           MR. HIGGINS:  Yes.  The next issue is

9   somewhat related because it involves the term

10  "polymer," but it's a different issue.  Claim

11  2, and we're on the same element, recites a

12  nozzle configured to emit a fiber together with

13  a polymer.  And Dr. Gall, Markforged's expert,

14  in his report, he submitted an opinion that

15  said, "In my opinion, a person of skill in the

16  art would understand that the limitation 'a

17  nozzle configured to emit a fiber together with

18  a polymer' refers to the the nozzle disclosed

19  in the '660 patent specification into which a

20  fiber and polymer enter the nozzle as separate

21  materials and are combined together into a

22  composite material and then emitted.  A person

23  of skill in the art would understand that the

24  'nozzle configured to emit a fiber together

25  with a polymer' is different from a nozzle that

1    does not combine separate materials together."

2    And this is from paragraph 169 of his report,

3    which is attached as Exhibit 2 to our letter

4    brief.

5         This is entirely new.  This is nowhere

6    disclosed in their contentions, and I do want

7    to initially note that Defendant did not

8    respond to this in their letter.  We have no

9    response from them.  We think our motion should

10   be granted as a matter of course, but to kind

11   of go beyond that, though, perhaps they

12   provided a rebuttal, there is absolutely

13   nothing in their contentions about this claim

14   element requiring two components to enter the

15   nozzle separately.

16        And to be clear, this term has never been

17   identified for construction.  We don't even

18   have a case where this was identified in some

19   joint chart.  To the extent they're saying this

20   is a disputed construction, this is even worse

21   than the "polymer" term.

22        And there really can't be any argument on

23   their side that this position was somehow set

24   forth at any place in their contentions prior

25   to Dr. Gall's report.  The claim language says

1    "together with."  Dr. Gall came forward with a

2    new opinion that this language requires two

3    things be separate.  That's actually the

4    opposite of what "together" means, so Dr. Gall

5    is trying to apply this new rewriting of the

6    claim language; new, perhaps, claim

7    construction; and a new noninfringement

8    argument.

9         I mean, to be honest, this is an issue I

10   would have happily argued during claim

11   construction because they're trying to say

12   together means separate.  But nevertheless, we

13   have Dr. Gall's new opinion on this, and,

14   again, this is an issue that relates to Claim

15   2, and this is the issue that they argued

16   demonstrates no infringement under our claim

17   construction in response to our summary

18   judgment motion.

19        They're relying on -- this theory first

20   came up in Dr. Gall's report.  Now we see the

21   summary judgment.  It is nowhere in their

22   contentions.  Their letter doesn't even

23   amendment to show that it was there at all.  So

24   we think based on this, there's just a clear

25   lack of disclosure, that this should be struck

1      from Dr. Gall's report, and preclude their

2      reliance on this entirely new position.

3              THE COURT:  Thank you, Mr. Higgins.

4         Mr. Wingfield, I admit that I struggled

5      to find a response to this argument in your

6      letter.  Where is the response?

7              MR. WINGFIELD:  Your Honor, we did

8      not appreciate that the argument for "polymer"

9      was limited to the definition of "polymer" if

10     these two things are being presented separately

11     because, as Mr. Higgins started out, this term

12     includes that term "polymer."

13         Contrary to what Mr. Higgins said, first,

14     Dr. Gall is not presenting a claim construction

15     position in his expert report.  Continuous

16     Composites moved on that issue as part of their

17     Daubert motion, and that issue is being

18     addressed and being briefed for the Court now.

19         And then secondly, our contentions do

20     state that the material being used by

21     Markforged's printers or the printers do not

22     emit a fiber together with polymer.  It emits a

23     monolith pre-imprinting material, and it cites

24     deposition testimony and documents that bear

25     that out, and that is an active issue on

1    dispute in the summary judgment motion as well

2    that Continuous Composites filed.

3         The passage that Mr. Higgins read from

4    Dr. Gall's expert report explains what the

5    specification of the patent discloses and says

6    that, consistent with that, this limitation

7    would be understood to be addressing a nozzle

8    where two materials come in and two materials

9    come out together, where Markforged's product

10   has one material coming in and one material

11   coming out.  That's the noninfringement issue

12   that's at issue in the summary judgment

13   briefing, and that's all that was being

14   explained in the paragraph that Mr. Higgins

15   read and also the subsequent paragraphs in

16   Dr. Gall's report on that limitation.

17        THE COURT:  Thank you, Mr. Wingfield.

18   I appreciate that.  I want to ask a follow-up

19   question to make sure it's crystal clear for

20   the record are here.

21        In Plaintiff's letter, on page one, the

22   last full paragraph, last sentence, it says,

23   "Accordingly, to the extent Defendant argues

24   this is a separate, new construction based on

25   the term 'polymer,' then this is an additional

1    reason to strike."

2         To be clear, Mr. Wingfield, you are not

3    arguing that this is a separate, new

4    construction; is that correct?

5         MR. WINGFIELD:  That is correct.

6    We -- I believe we said that in response to the

7    Daubert motion as well.

8         THE COURT:  Fair enough.  This is an

9    easy one, and I think with that, Mr. Higgins, I

10   assume we are good to go on that.

11        MR. HIGGINS:  Not quite, Your Honor.

12   Let me clarify one thing, and it goes with what

13   I read in from Dr. Gall's report, and it's

14   exactly what Mr. Wingfield just said.  Dr. Gall

15   is interpreting this claim based on the

16   specification.  That is claim construction.

17   That's reserved for the Court.  That is a new

18   position that was not disclosed.

19        THE COURT:  I'm a little bit stuck

20   here, Mr. Higgins, because I look at what

21   you're saying in your letter, and you're

22   warping a little bit, and I appreciate you're

23   doing it a little bit in response to

24   Mr. Wingfield, but he's just represented to you

25   that it is not a new construction and this is

1    nothing new, and I think he'll be bound by

2    that.  Is that not good enough?

3            MR. HIGGINS:  If he is bound by the

4    fact that they are not going to interpret this

5    term as Dr. Gall is saying, then, yes, we would

6    be fine with that.  Given the response to our

7    summary judgment motion, that's not what we

8    view them doing.  If he is bound by the fact

9    that they are not interpreting this to require

10   two separate materials, then, yes, we're fine

11   with that.

12           THE COURT:  Mr. Wingfield, very

13   briefly, please.

14           MR. WINGFIELD:  Yes.  So, Your Honor,

15   we have not -- Dr. Gall has not provided a

16   separate construction for the large limitation,

17   "nozzle configured to emit a fiber together

18   with a polymer."  What Dr. Gall in his expert

19   report, said that "together with" indicates

20   that two things are being passed through the

21   nozzle.  That's the plain language and the

22   plain "together with."  This is an active

23   dispute in front of the Court in response to

24   the claim construction argument.

25           We do not believe that Dr. Gall has put

1    forth a claim construction position.  Rather,

2    he is reading and applying plain language of

3    the claim that says "together with."  And

4    "together with" means, as Mr. Higgins said

5    today, that two things are being moved

6    together.

7           Markforged's position is that it has a

8    single material that passes through the accused

9    nozzle.  One material in; one material out.

10   That's the infringement dispute that's being

11   addressed on summary judgment, but Dr. Gall has

12   not issued or opined that this limitation

13   should get a particular construction from the

14   Court.

15           THE COURT:  Okay.  Mr. Higgins, would

16   you like to move on to the next argument,

17   please?

18           MR. HIGGINS:  Yes.  The next term,

19   Your Honor -- and this is moving, again, in the

20   order we've gone here, is the term "configured

21   to."  And the term "configured to" show us up

22   in a few claim elements in Claim 2 as well as

23   Claim 4 of the '660 patent.

24           For example, the term we're talking about

25   is a nozzle configured to.  There's also I

1      think a heater configured to.  There's several

2      terms.  And the caselaw on this, what

3      "configured to" means, is very old, not

4      disputed by the parties.  "Configured to" means

5      you have something designed to do something or

6      something similar.

7           And on this topic there's -- again, this

8      comes back to the pattern.  There's nothing in

9      Markforged's noninfringement contentions that

10     when their products are sent to their

11     customers, that they are not configured to or

12     designed to print with their continuous fiber

13     filament, and nor could they have made this

14     argument because there is a separate nozzle --

15     this is not disputed -- in the accused products

16     that its only function is to print this

17     continuous fiber filament.  There's literally

18     no other use for it.  And beyond that,

19     Markforged actually performs tests with each of

20     their printers, this nozzle printing the fiber,

21     before it sends them to a customer.

22          Those were the facts.  We knew that.

23     There's no dispute here, and there was nothing

24     in their noninfringement contentions.  But then

25     when we got Dr. Gall's expert report, for the

1    first time we see that he's arguing that it's

2    only after a customer takes this spool of

3    filament and installs it in the printer that

4    the accused products are designed to print with

5    this continuous fiber filament.

6         Setting aside we're not here today to

7    argue the many legal problems with this

8    argument, but this simply wasn't in their

9    contentions.  It's not something they raised;

10   it's not something we should be dealing with

11   now.

12        Now, Markforged's response in its letter,

13   it's arguing -- its point is that we pointed to

14   the claims only being infringed when continuous

15   fiber is used to print, but, again, that's

16   nowhere in their contention for the '660

17   patent.

18        This patent is only apparatus claims.

19   The other claims that were at issue in this

20   case that have now been dropped, those are

21   method claims.  So for those claims, we would

22   have had to prove that someone actually takes

23   the fiber, prints it, performs the method.

24   Here, we have apparatus claims.  It's what the

25   the apparatus is designed do.  While Markforged

1       tries to point to a statement in our older

2       contentions in which we said Markforged

3       infringes the claims when it does the testing,

4       that's true.  And to be clear, that's a test

5       that Markforged performs with each product

6       before it ships.  And even with an apparatus

7       claim, a use of the apparatus constitutes

8       infringement under the patent law.

9            So what we're left with here is, there

10      are no facts to support this argument.  We have

11      the facts to establish that not only the

12      customers do it, the products are designed to

13      do it, Markforged does it.  We have this new

14      theory in Dr. Gall's report, and it's now shown

15      up in response to our summary judgment motion,

16      and we've shown this in some of the exhibits.

17           For example, Exhibit 6 to our letter.  We

18      copied and pasted their contention for a claim

19      element and then showed it next to Dr. Gall's.

20      There is nothing mentioned in there about

21      something not being configured to.  They simply

22      made it up in Dr. Gall's report.  They argue

23      that there's no indirect infringement, but that

24      has nothing to do with this.  This is direct

25      infringement.  Is the apparatus designed to do

1     this?  Throwing something into Dr. Gall's

2     report, bringing up in our motion for summary

3     judgment, this is not something that was raised

4     at all during fact discovery.  We could have

5     questioned their witnesses more on this, but

6     what the witnesses said was Markforged tests

7     these products.

8          We have our contentions.  We said the

9     products are designed to, and now they come up

10    with this new argument trying to twist that in

11    a way that doesn't make sense.  But it was

12    clearly not disclosed in their contentions, and

13    I see nothing in their response letter where

14    they even pointed to anything being disclosed

15    with respect to this "configured to" language.

16    They're pointing to indirect infringement,

17    which has nothing to do with this.

18          I'll stop there, Your Honor, and respond

19    to anything Mr. Wingfield has to say.

20               THE COURT:  Let me ask you this

21    question before I turn it over to

22    Mr. Wingfield.  I'm seeing -- I'm looking at

23    your Exhibit 6 that you just referenced under

24    Markforged's noninfringement contentions, the

25    left column there.  And at the end, it says,

1        "Users infringe objects comprised only of nylon

2        or chopped up fiber" and only X percent are

3        continuous fiber.  Does that not suggest that

4        the ability to do non-infringing things?

5                MR. HIGGINS:  No, Your Honor, and

6        that's a separate issue here.  If you look at

7        the first sentence of that paragraph, it says

8        "Markforged's X5 does not indirectly infringe."

9        So whether a product can be used to infringe

10       sometimes and sometimes not to infringe, that's

11       a separate issue for indirect infringement that

12       we're not dealing with.  As you see at the top

13       there, the only thing they have with respect to

14       direct infringement is a very generic statement

15       that doesn't mention the claim element or

16       anything.  That's what we're dealing with here.

17       The standard for direct infringement of an

18       apparatus claim is a product designed to do

19       this.  We don't need to consider whether the

20       product was actually used in the manner.  That

21       would be for a method claim.  There's a

22       distinction between those two things.

23               THE COURT:  Great.  Fantastic.

24       Mr. Wingfield?

25               MR. WINGFIELD:  Your Honor, you

1    pointed to the relevant language in our

2    noninfringement contention.

3         First, we're bleeding over into what was

4    disclosed and also some legal issues in the

5    case, so it's -- a prerequisite for indirect

6    infringement is that there's direct

7    infringement.  What we pointed out to in this

8    language that you identified in Plaintiff's

9    Exhibit 6 is that Markforged's printers, yes,

10   they have the continuous component, a fiber

11   nozzle, that Mr. Higgins alleged or alluded to.

12   But that nozzle is only used at certain times.

13   It's only allowed to print or capable of

14   printing, configured to print, fiber as

15   required in the claims 14.2 percent of the

16   time.  The rest of the time, that nozzle is not

17   operational and the printer is not printing

18   fiber.

19        That paragraph that you read is

20   throughout every limitation of our claim.  We

21   identify it as part of the paragraph where

22   indirect infringement.  The underlying issue

23   for direct infringement is -- sorry.  For

24   indirect infringement is that there must be

25   direct infringement.

1          And as to every limitation, the bulk of

2     the information being discussed in our claim

3     chart for each accused product is talking about

4     the structure and operation of the components

5     that Continuous Composites has identified and

6     whether it meets the claim language.  This

7     paragraph, which we also included into every

8     discussion of a claim element, goes to the

9     issue that our printers only operate, if at

10    all, to print fiber as recited in the claims a

11    small fraction of the time.

12         We have found, in response to their

13    summary judgment motion, address the issue that

14    Mr. Higgins raised about what the plain meaning

15    of "configured to" is as the Courts have

16    identified, but it's not designing.  It's not

17    something that's something for the design to do

18    something.  It's capable of doing something.

19    It's long establish that had the word

20    "configured to" is narrower than capable of or

21    designed to do.

22         And so, again, we're applying the plain

23    language of the claim.  This is something that

24    we identified from the very beginning in our

25    contentions going back to October.  We saw,

1    very shortly after our noninfringement

2    contentions, Continuous Composites recognized

3    that its own contentions in identifying direct

4    infringement for the asserted patents,

5    including the '660 patent, that Markforged

6    indirectly infringes the '660 patent when it

7    uses the printer to print fiber in a test.

8    That means that Markforged has done the same

9    thing that Dr. Gall is saying is being done by

10   our -- would be done by our customers to

11   configure the printer to print fiber.  You have

12   to load the fiber according to a guide.  You

13   have to change the hardware and software

14   configuration of the printer so that it's able

15   to print fiber, but that information and that

16   theory was disclosed in our contentions.

17        Secondly, Continuous Composites really --

18             THE COURT:  I apologize for

19   interrupting.  I'm sorry for cutting off mid

20   thought, but if I don't, I'll lose mine forever

21   whereas you probably will retain yours.

22        Plaintiff says this is a new infringement

23   theory.  I want to be very clear.  They say the

24   Gall rebuttal newly asserts that Defendant does

25   not infringe because it's the end-users, not

1          Defendants, who configures the accused product.

2                  Two part question.  One, is that a new

3          assertion by defendant?

4                  MR. WINGFIELD:  We -- I believe the

5          assertion --

6                  THE COURT:  Where was it previously

7          asserted is my step two question.

8                  MR. WINGFIELD:  In the paragraph that

9          you referenced on Exhibit 6.

10                 THE COURT:  You say that doesn't

11         apply because that's indirect, and they're

12         talking about direct.

13                 MR. WINGFIELD:  And my response is

14         that indirect infringement underlying issue

15         there is direct infringement, and this goes to

16         when those printers could infringe.  The

17         printer is used to print 3D objects made of

18         continuous fiber material.  That's what's being

19         accused here, and that only occurs 14.2 percent

20         of the time.  We're saying that these printers

21         are not configured to meet these claim

22         limitations the vast majority of the time that

23         they're being used.

24                 THE COURT:  Okay.  Mr. Higgins, would

25         you like to respond, please?

1                    MR. HIGGINS:  Yes, Your Honor, and I

2       want to make one thing clear here.  Indirect

3       infringement requires action of a third party,

4       for example, a user or a customer.  Direct

5       infringement, which we have in our contentions

6       and that's the theory, that's looking at the

7       actions or what is made by Markforged

8       themselves.  It doesn't involve any third

9       party.

10              So this whole section and this paragraph,

11      as Mr. Wingfield said, they literally copied

12      and pasted the exact same paragraph into each

13      section of their chart for each claim element.

14      That relates only to actions of a third party,

15      and our contention is Markforged designs and

16      configures their product such that they can

17      print with this continuous fiber, and we noted

18      Markforged does it themselves.  Thus, it's

19      direct infringement.  We don't care what a

20      third party does in that instance.

21              And what we're seeing them argue in

22      Dr. Gall's report and what we saw in the

23      summary judgment opposition is that Markforged

24      does not configure the products.  They don't

25      directly infringe.  That specific argument for

1       direct infringement is not what's in their

2       contentions.  We did not move for summary

3       judgment on indirect infringement.  They have

4       nothing in their contentions about lack of

5       configurations by Markforged with respect to

6       products, and that's what we're moving to

7       preclude.

8              THE COURT:  Thank you, Mr. Higgins.

9       I fully understand your position now.  I

10      appreciate that.  Should we move on to the next

11      one?

12             MR. HIGGINS:  Yes, Your Honor.

13             MR. WINGFIELD:  Sorry, Your Honor.  I

14      would like to address the *Pennypack* factors and

15      the prejudice here regarding the limitation.

16             THE COURT:  Briefly, please.

17             MR. WINGFIELD:  Dr. Oswald responded

18      to Dr. Gall's opinions here and Continuous

19      Composites deposed Dr. Gall, and Continuous

20      Composites did not identify any additional

21      discovery that it would have sought had it

22      appreciated Markforged's position from its

23      contentions.

24             And, like, the parties don't dispute the

25      underlying facts here.  If you print fiber, a

1    user must load fiber into the printer.  The

2    user must change certain settings in the

3    printer before the fiber is printed.  That's

4    not in dispute, and Continuous Composites has

5    not identified any additional discovery that it

6    would need to respond to this, hasn't

7    identified any other discovery it would have

8    sought had it appreciated what Markforged was

9    disclosing in this paragraph.

10            THE COURT:  Okay.  Thank you very

11    much.

12        Mr. Higgins.

13            MR. HIGGINS:  Yes, Your Honor, and if

14    it's all right with you, I want to try to

15    address these next three terms together.  Maybe

16    we can help move things along because they

17    share the same common issue, and that's the

18    portion of our letter brief that talks about

19    Claim 4.  We're now moving on to the other

20    claim of the '660 patent.

21        For Claim 4, we have the term "a nozzle

22    configured to emit a fiber-reinforced material"

23    and "a heater configured to heat the

24    fiber-reinforced material."  And then there's

25    also a last limitation that relates to pulling

1       the fiber.

2              And I address these all together because

3       they have the same issue, and when we look at

4       Markforged's response letter, they've actually

5       admitted they failed to put something in their

6       contentions, and we've shown this.

7              Again, looking back at Exhibit 6, this is

8       their contentions for claim element 4A, which

9       is the nozzle, the same exhibit we were looking

10      at.  Dr. Gall came up a new theory as to why

11      this isn't met, and all Markforged said in the

12      contentions is what we just read:  Continuous

13      Composites bears the burden.  They haven't met

14      it.  No infringement.

15             It doesn't mention the claim elements.

16      It's the same for the nozzle.  There's nothing

17      in their contentions.  It's a boilerplate

18      statement, and what we see in Dr. Gall's report

19      at paragraphs 208 to 210 is an entirely new

20      argument that Markforged -- they don't even

21      dispute it's not in the contentions.  I would

22      expect Mr. Wingfield to say the same thing

23      again:  We got to depose their expert, so

24      there's no prejudice here.

25             But, again, I would point back to my

1   initial comments.  It happens once, maybe it

2   was a mistake, maybe we can cure that.  This is

3   over and over and over again, and now we're on

4   the sixth argument.  And they don't have an

5   argument this was in their contentions.

6   They're just saying, "Forgive us now.  We threw

7   this in the expert report.  You got to depose

8   the expert.  Let us go ahead with it."  This

9   entire case has been progressing.  We disclosed

10   our theories, and they haven't, and that

11   shouldn't cut it here.

12         And to go back to the factors I was

13   pointing to earlier, one of the factors the

14   Court looked to, it's the diligence.  It's,

15   when did you come up with these theories?  When

16   could you have known about them?  These are all

17   based on their products.  Our contentions

18   haven't changed on these elements from our

19   initial contentions served almost a year ago.

20   There is no diligence here.  They just -- they

21   didn't do it, and they tried to cram it in

22   later.

23         And I do want to mention one thing on one

24   of the terms that is slightly different even

25   though they're the same.  This is the pulling

1          limitation, and this is where Markforged side

2          in its response that it inadvertently did not

3          include this.  And they point to the fact that,

4          well, they included a similar argument for some

5          similar claim elements in other patents, so we

6          were on notice that they disputed something.

7               But there's two problems with that.

8          First:  If that was the case, the proper course

9          of action was, during discovery, Markforged

10         should have sought leave to amend.  And maybe

11         they didn't because this wasn't an inadvertent

12         mistake.  The claim is different here.  The

13         claim elements are different.  The issues are

14         different, so they didn't include the argument

15         here, and that's how we proceeded.

16              And their argument that they make in

17         their response brief, that because they

18         included this for one claim in some other

19         patent, we should have been on notice, this

20         District actually views that the opposite way.

21         If you include an argument for one claim, it's

22         fair for the other party to view you're

23         disputing something there that you're not

24         disputing for this claim, and that's the

25         *Intellectual Ventures* case that we cited to in

1       our brief.  It's 2017 U.S. District Lexus

2       182511.  So here, we have, for the pulling

3       element, they have no contentions.  They admit

4       it.  They try to point to something they had

5       for a different claim in a different patent

6       that had different words and use it for a

7       method claim, not an apparatus claim.  When you

8       look at the caselaw here, that actually

9       supports our position and not theirs.

10              But either way, however we view all this,

11      for all three of these arguments, the proper

12      course of action was not for Markforged to

13      simply throw them into their expert report and

14      hope they could argue no prejudice under the

15      *Pennypack* factors.  By doing that, a party

16      skips out on the requirements and that rigorous

17      standard to meet a motion for leave to amend.

18      They have to show diligence, lack of surprise,

19      when did they find out about the information.

20      By skipping straight to this step, they're

21      trying not to address that.  If we could just

22      include everything in an expert report for the

23      first time, then there is no point of

24      contentions.

25              And when you look at this as a pattern,

1       there are many -- we're now in the sixth

2       element just for noninfringement.  We haven't

3       gotten to invalidity yet.  This is a pattern

4       that they've not disclosed things, tried to put

5       it in the expert report, and asked for

6       forgiveness later.  And especially on the terms

7       here where they have no response, they clearly

8       didn't include it, we think that should be

9       struck.

10          I'll stop there, Your Honor, if you have

11      any questions.

12          THE COURT:  I don't, Mr. Higgins.

13      Thank you very much.  I appreciate that

14      argument.

15          Mr. Wingfield, please.

16          MR. WINGFIELD:  Yes, Your Honor.  I

17      heard Mr. Higgins identify the terms.  I want

18      to make sure I have this.  Right we're talking

19      about the fiber-reinforced material Claim 4,

20      the heater limitation of Claim 4, and the

21      pulling limitation of Claim 4.

22          As for the fiber-reinforced material

23      limitation, the dispute here is whether the

24      material that Markforged uses is reinforced.

25      We said in our contentions that Continuous

1    Composites has the burden here.  Continuous

2    Composites never explained how the material

3    that Markforged is using is reinforced.  So

4    they pointed to fiber material.  That's true.

5    We have that, but their contentions do not

6    explain how it's that reinforced material.  So

7    we didn't get that explanation until which saw

8    Dr. Oswald's report, and Dr. Gall then

9    responded to it.

10        And to the heater limitation, it's a

11   similar thing with respect to the heater

12   limitation.  As to the heater limitation,

13   Dr. Oswald -- Continuous Composites'

14   infringement contentions identified a component

15   in our product and just baldly said it performs

16   the function recited in the claim.  There was

17   no explanation.

18        Markforged then responds, said you've not

19   identified a component in our product that

20   performs the function recited.  And so at the

21   time -- and the parties -- we had, Your Honor,

22   fact witness testimony -- fact deposition

23   testimony that Continuous Composites was aware

24   of where our witnesses explained that the

25   component they identify does not perform the

1       function recited in the claim because it's an

2       insulating material.  There's no explanation

3       about the insulating material in Continuous

4       Composites' contentions.  We saw that for the

5       first time in Dr. Oswald's report, and Dr. Gall

6       then responded in kind to the theory that

7       Dr. Oswald provided.

8            With respect to the pulling limitation,

9       as we've mentioned in our response, it was an

10      inadvertent mistake to leave the discussion of

11      the pulling limitation out of Claim 4 of the

12      '660 patent.  I will note, Your Honor, that

13      Continuous Composites' infringement

14      contentions, for every pulling limitation that

15      we identify that we mentioned were in the '543,

16      '798, '708, and '109 patents, Continuous

17      Composites has the same infringement

18      contentions for those limitations as they do

19      for those limitations in Claim 4 of '660, and

20      Markforged provided the same response.

21           So the dispute has always been, is

22      material being pulled through a nozzle?  Yes,

23      the language is a little different.  But is

24      material being pulling through a nozzle?  Our

25      response has always been that it's not, and

1          Mr. Higgins cites the *Intellectual Ventures*

2     case and says that this Court has recognized

3     that when an argument is made for one claim and

4     not another, that means something, but there's

5     a couple distinctions with that case, Your

6     Honor.

7          The first is, in that case, there were

8     two claim limitations at issue that were

9     unrelated to each other.  That's not the case

10    here, where we have pulling limitations across

11    the different patents.  All of them are

12    related.  And that's evidenced, Your Honor --

13    both parties recognize it -- in DI 101 on

14    limitation.  All the pulling limitations are

15    identified together on that page as being

16    related terms.

17          And the second, the Court determined in

18    *Intellectual Ventures* that the defendant would

19    have been prejudiced if the plaintiff were

20    allowed to maintain its new infringement

21    theories because the defendant was unable to

22    conduct the proper fact investigation about the

23    new evidence.  That's not the case here because

24    Continuous Composites was aware of the reasons

25    Markforged said there was no pulling or the

1      accused products didn't pull fiber through a

2      nozzle because that limitation was recited in

3      other claims.  We have provided the

4      noninfringement contentions, and Continuous

5      Composites deposed our witnesses on that issue.

6             So I appreciate that we made a mistake.

7      We didn't recognize or realize the mistake

8      until after we served our expert report and we

9      received a letter from Continuous Composites

10     saying this is out of bounds, and we

11     immediately said this is an inadvertent

12     mistake.  You're aware of our disclosure.  Are

13     we really going to dispute this for the pulling

14     limitation?  They brought that particular

15     dispute up here.  It was an inadvertent

16     mistake.  They correctly copied and pasted the

17     same theory across all limitations.  We did not

18     do that for one of our limitations.

19             THE COURT:  Okay.  Thank you,

20     Mr. Wingfield.  I appreciate that.

21             Mr. Higgins, would you care to respond,

22     or would you like to move on to the provisional

23     application issue?

24             MR. HIGGINS:  Very quickly, Your

25     Honor, maybe 30 seconds.  I want to note that

1      our contentions for this final pulling claim

2      element are not copied and pasted from another

3      element.  We have different language addressing

4      this claim element.

5           When Mr. Wingfield brought up the thing

6      about the heater, we have a cited document,

7      explanation, and we have a drawing with arrows

8      pointing to the element that is called a heater

9      block and produces heat.  I mean, we have our

10     contentions in there.

11          The plain fact -- and I appreciate

12     Mr. Wingfield saying at least one of these was

13     a mistake.  When it happens over and over and

14     over again, it gets harder to believe that

15     these were not purposeful omissions and they

16     just changed their mind.  And I think that just

17     goes to our prejudice.

18          With that, Your Honor, I'll move on to

19     the next argument unless there's anything else.

20               THE COURT:  No, thank you very much.

21               MR. HIGGINS:  So the next issue to

22     address -- and we're going to move on to the

23     invalidity side of this, and now we're talking

24     about an argument for invalidity under 102(g),

25     which is an argument that Markforged raised

1     that they invented the subject matter of our

2     asserted claims before we did.  So this is

3     dependent on information in Markforged's

4     possession.

5          So for some context here, Markforged

6     presented in its contentions an invalidity

7     argument under 102(g) that a March 2013

8     provisional application was a conception by

9     Greg Mark, founder of Markforged, of the

10    asserted claims.  Markforged said in its

11    contentions, which we provided with our letter

12    in Exhibits 9 and 10 -- so this is page 45 of

13    Exhibit 9 -- that the March 2013 provisional

14    application was both conception and reduction

15    to practice that met these claims and it was

16    commercialized and embodied later, and they

17    marked one device sold in 2014.

18         That was their position.  That position

19    remained the same all the way up until even the

20    final supplemental invalidity contentions they

21    served on the last day of fact discovery.

22         This is not the case -- we're not

23    complaining their contentions are too vague and

24    they didn't put us on notice.  What we see in

25    Dr. Gall's report is mention of these new

1    provisional applications, these new prototypes,

2    these new arguments that are not in their

3    contentions.  It's not a matter of specificity.

4    Their contentions are silent on two other

5    provisionals from July, maybe August, and these

6    two prototypes, a July 2013 prototype and the

7    Ruby prototype.  They never mentioned them in

8    the contentions despite supplementing their

9    contention twice.

10         We approached Markforged with this.  We

11   saw in Dr. Gall's report, that he's now relying

12   on two other provisional patent applications as

13   conception reduction to practice.  He's now

14   relying on these two unidentified prototypes as

15   conception reduction to practice.  He also

16   identified two nonprovisional patents, so what

17   the provisionals may have turned into.  These

18   are actual published applications by

19   Markforged.

20         We approached Markforged with this.  They

21   responded by withdrawing their reliance on the

22   to nonprovisional patents.  They agreed it was

23   not in their contentions.  They withdrew it.

24   They refused to withdraw the two prototypes and

25   the two provisionals that are in the exact same

1      boat as these nonprovisional patents.

2           With respect to the with two provisional

3      applications that they've now cited to, and

4      these are April, June, and July 2013

5      provisionals, I think this should be a

6      cut-and-dry dispute here.  When we raised this

7      dispute with Markforged, this was before we

8      took Dr. Gall's deposition, their expert.  He

9      provided this theory.  So during his

10     deposition, which was when -- I think it was

11     the day of or the day after we filed our

12     initial letter -- I put Markforged's

13     contentions, their invalidity contentions, in

14     front of Dr. Gall, and I gave him -- he had his

15     expert report, and I flat-out asked him, "Are

16     you putting forth the same theory that

17     Markforged did in its contentions?  Do you see

18     these two provisionals anywhere?"

19          He said no to the question.  There is no

20     identification in their contentions that either

21     provisionals or the two prototypes constitute

22     102(g) prior art.

23          I followed up with him.  And, Your Honor,

24     to be clear, this testimony we supplied in the

25     supplemental letter for your reference.

1          So the follow-up question I asked him,

2     "So then your report here, you're comparing the

3     two" -- his report to Markforged's

4     contentions -- "it's presenting a different

5     position here than you've added these

6     provisionals that aren't here; right?"

7          His answer, "I used the other two

8     provisionals.  They, Markforged, did not."

9          I then asked him about the prototype.  He

10    also agreed he used and relied on the

11    prototype.  They are not in the contention just

12    like the two provisionals.

13          And to us, it's -- again, this is not a

14    matter of specificity, and their own expert

15    Dr. Gall couldn't even support their theory

16    that they somehow disclosed this.  He admitted

17    he used things that aren't in their

18    contentions, and I asked him why he did that.

19    He said, "Well, I thought it was helpful."

20    That's not the standard.

21               THE COURT:  I'm sorry.

22          Is it not enough that Defendant gave

23    notice of its general 102(g) theory that is

24    that at least as of March 2013 it has a

25    provisional application that would show

1    conception and reduction to practice?  Do the

2    invalidity contentions need to contain all the

3    specific evidence in support of the theory?

4           MR. HIGGINS:  Let me answer that in

5    two parts, Your Honor.  The first is we are not

6    contending that their contentions do not claim

7    a date of conception and a reduction to

8    practice based on the March 2013 provisional.

9    That's what they disclosed.  The issue is

10   Dr. Gall added additional provisional

11   applications and then tried to say we can look

12   at these or we can look at those together with

13   the other provisional and that's a separate

14   reduction to practice.

15          Then he also identified these prior art

16   prototypes, which are actual devices.  And

17   setting aside that's a whole 'nother theory and

18   something we would need to evaluate, the

19   standard for whether a prior art device is

20   enabled, meets the claims, is a conception

21   reduction to practice, that's a different legal

22   theory, a different evaluation or different

23   factors, than when you're looking at a patent

24   application as being a prior conception or

25   reduction to practice.

1          And that's why we saw -- and this gets on

2     the second half when we get into Mr. Benheim's

3     documents -- that's what make this reliance on

4     the prototype more troubling.  They actually

5     filed for summary judgment on this, and their

6     argument was this July 2013 prototype is a

7     conception reduction to practice of the claims.

8     They aren't even relying on the only theory

9     they disclosed in their contentions.

10          And as I mentioned, whether this device

11     is a prior conception reduction to practice,

12     that is a different theory altogether than the

13     only date they disclosed in their contentions

14     of March 2013.  Courts have struck these

15     arguments before.  We have a moving target of a

16     date.  They picked their date.  All of this

17     information is only in their possession.  This

18     is Markforged's own products, devices, prior

19     art.  They picked their date.  The only time

20     they tried to change it was when they put out

21     Dr. Gall's report, added two new references and

22     two new prototypes that were not cited or

23     relied on in their contentions.

24          And as part of this whole theory that

25     they have -- and I think this gets to the worst

1    offense today by far.  They are relying on an

2    individual named Mr. David Benheim, and they

3    are relying on a certain lab notebook of

4    Mr. Benheim's and a video and some other

5    documents that he produced.  And Dr. Gall

6    relies on this --

7             THE COURT:  Can we just talk about

8    the provisionals and prototypes before we talk

9    about the notebook?

10            MR. HIGGINS:  Sure, Your Honor.  I

11   was going to tie them together, but we can take

12   them separately.

13            THE COURT:  If you don't mind, I

14   really prefer doing it that way.

15        Before I turn it over to Mr. Wingfield,

16   can you talk to me a little bit about, one, how

17   have you been prejudiced, and, two, if you were

18   given the ability to be able to cure the

19   prejudice, what would you be asking for?

20            MR. HIGGINS:  The prejudice, Your

21   Honor, is they picked one date, March 2013, and

22   that is this provisional application.  So when

23   we're evaluating providing our contentions,

24   coming up with our claim construction,

25   infringement arguments, and rebuttal to their

1      invalidity arguments, we're looking at the

2      disclosure in the March 2013 provisional, and

3      we're sitting there saying, they think this is

4      a conception of our claims.  They later reduced

5      to practice in the Mark 1.

6            And we're evaluating that, saying here's

7      what it discloses, here's our infringement

8      theories, here's terms we may want to construe,

9      and that's how we prepared our case, and that's

10     how they progressed all through fact discovery.

11           Now when we get to Dr. Gall's report,

12     it's not one new theory.  It's at least two new

13     theories based on two provisionals, and these

14     provisionals are different.  They have a

15     different disclosure than the other

16     provisionals.  There's a different date.

17           Then when we get those two prototypes,

18     one of these prototypes is dated after our

19     nonprovisional filing date, so it can't be

20     prior art and it wasn't cited.  The July 2013

21     prototype was never mentioned as a conception

22     reduction to practice of anything, so there was

23     nothing there for us to consider and evaluate

24     when we're doing arguments.  They were looking

25     at the provisional.  We did our contentions and

1      everything based on that.

2           And now we're at the point we are past

3      dispositive motions, setting aside we have a

4      reply brief due in seven days and they do on

5      this issue, that we're now seeing this theory

6      that they're moving on, that the prototype is

7      what they were going to rely on all along, but

8      it is never in their contention.  It's not even

9      in those two paragraphs that I read to you

10     from.  They had a claim chart attached to it.

11     Those claim charts that they filed with their

12     final contentions say that the March 2013

13     provisional is the conception.  There's no

14     prototype mentioned there.

15          So the prejudice to us is we're getting

16     this theory thrown at us in Dr. Gall's report

17     and then having to formulate a whole new

18     response during expert discovery to try to come

19     back with that, and then they change it again

20     in the summary judgment motion.  Again, it's

21     the pattern of constantly changing what they

22     have, and it gets worse when we get to the

23     Benheim stuff, which I'm not going to talk

24     about right now.

25          But still here, this is information

1        that's in their sole possession.  This was how

2        they started their company.  This was their

3        initial product, supposedly, and for them not

4        to be able to disclose that in a timely manner,

5        we believed they had disclosed everything to

6        us.  This was their own stuff.  They didn't

7        have to go to a third party like you sometimes

8        have to do in these cases.

9            So I think the prejudice -- and the

10       complete lack of diligence here, and that goes

11       to the prejudice, I think all of that together

12       just weighs in favor of just not being fairly

13       disclosed and should be struck.

14               THE COURT:  Okay.  Thank you,

15       Mr. Higgins.

16           Mr. Wingfield, were all the provisional

17       applications produced in document discovery?

18               MR. WINGFIELD:  They were, Your

19       Honor.

20               THE COURT:  And when and how did you

21       make Plaintiff aware of the existence of the

22       prototypes?

23               MR. WINGFIELD:  First, the

24       prototype -- both prototypes, the July 2013

25       prototype and Ruby prototype, are cited.  We

1    document and show pictures of them or cite them

2    in our contentions.  They were cited in our

3    October contentions and our December

4    contentions.  So Exhibit 12 to Markforged's

5    letter, Your Honor, is our October 21, 2022,

6    supplemental invalidity contentions.  At pages

7    25 and 26, you'll see a citation there to a

8    document bearing the Bates number 244834244925.

9    That document has the pictures of the July 2013

10   prototype that Dr. Gall discusses.  It has the

11   pictures of the Ruby prototype that Dr. Gall

12   discusses.

13            THE COURT:  I'm sorry, Mr. Wingfield.

14   Let me interrupt you for a second.  The 244834

15   documents and the pages that follow, does it

16   say that there are two prototypes or, are there

17   just two pictures?

18            MR. WINGFIELD:  There are multiple

19   pictures of both devices, so it's clear they

20   are two devices.  One is a very rudimentary

21   device that shows up earlier in the

22   presentation, and the other is a much cleaner

23   looking, finished product that shows up later

24   in the presentation.  It's clear there are two

25   different devices there, and we cited that

1    document as showing the continuing work and

2    perfection of Greg Mark's inventions from

3    March 2013 through the launch of the Mark 1

4    product in January 2014.  So our contentions --

5            THE COURT:  Does that list the three

6    provisional applications?

7            MR. WINGFIELD:  That document does

8    not list the provisional applications.

9            THE COURT:  Are those in your

10    contentions?

11            MR. WINGFIELD:  We do not cite the

12    provisionals in our contentions, no.

13            THE COURT:  Why it is sufficient to

14    point out a document that doesn't specifically

15    spell out two prototypes and doesn't list the

16    provisional applications and say that's good

17    enough?  Why not just -- what is the excuse for

18    not just putting those materials plainly in

19    black and white in your contentions?

20            MR. WINGFIELD:  So first, Your Honor,

21    you asked Mr. Higgins a similar question.  Why

22    wasn't our disclosure that Mr. Mark conceived

23    on the claimed subject matter as early as

24    March 2013 and reduced to practice at that time

25    sufficient?  Well, in Delaware, there are no

1          local patent rules that govern how much detail

2          a party should put in their 102(g) contentions,

3          but other courts do have those local rules, and

4          they are all that's required.  I'm talking

5          about the District of Delaware, the Northern

6          District of California, Eastern District of

7          Texas.  All have the same rule, 3-3A, that says

8          for prior art under 102(g), the party

9          advocating that position shall provide identity

10         of the person involved in the invention and the

11         circumstances surrounding it.

12              So we provided the earliest date we

13         could, March 2013, but Continuous Composites on

14         notice that March 2013 is the earliest that we

15         could identify for Markforged's independent

16         invention of the claimed subject matter, and

17         then also said that work continues throughout

18         from March until the launch of the Mark 1

19         product in January of 2014, and we cited

20         documents showing the prototypes.

21              We started and we cited a document

22         evidencing that March 2013 conception and

23         reduction to practice, one provisional

24         application.  We did not cite the others, but

25         Courts have also recognized, as you suggested,

1    Your Honor, that a party's contention doesn't

2    need to cite every document that supports the

3    contention so long as everything is specific.

4    There's one theory.  Markforged invented this

5    first.

6         THE COURT:  Let me ask you this,

7    then.  I hear your point, and I understand the

8    point of, well, we gave them the earliest

9    possible date, so if we assume that 2012

10   provisional application or whatever it is is

11   not on the table here and we're dealing with

12   the difference between March and August of

13   2013, we gave them the earliest, and that's

14   good enough, and that's one argument.

15        But then I read Gall's report, and it

16   seems as though he's relying pretty heavily on

17   the July provisional app and the July

18   prototype.  If March 2013 is the key date,

19   that's one argument, but it seems like you're

20   relying pretty heavily on July, and if so, if

21   you are, then it seems it must be pretty

22   important to the case.  And if that's so, it

23   seems you probably should have put it in your

24   contention.

25        MR. WINGFIELD:  So, Your Honor, we

1       identified the earliest date, and what Dr. Gall

2       has shown in his report is one part of the

3       102(g) analysis is the diligence and continued

4       work until public disclosure.  What he has

5       shown in his report is that Greg Mark's initial

6       invention of the subject matter of the claims

7       at issue occurred in March of 2013 and that

8       that invention persisted through his continued

9       work.

10              And so before other employees joined the

11      company, Greg Mark continued to refine the

12      larger inventions of his printer by filing the

13      subsequent provisional applications.  He filed

14      one in June and one in July.  What Dr. Gall

15      shows is that the core basic idea that's kind

16      of covered in these claims persisted through

17      each of those disclosures and persisted in the

18      work that Mr. Mark and Mr. Benheim did

19      beginning the summer of 2013 that led to one

20      prototype, the July prototype that was cited,

21      and the pictures were cited and discussed in

22      his presentation and then led to a subsequent

23      prototype that was then publicly displayed and

24      demonstrated later in 2013 and early 2014.

25              So what we are showing is a common thread

1    of persistence of the idea that is recited in

2    the claims, which is a printer that has certain

3    components that prints fiber, and that we

4    believe -- our contention is that Mr. Mark did

5    that initially in March, and he continued

6    through working on that idea, expounding on it,

7    making it a more refined invention and product

8    through January of 2014.

9         Just for our summary judgment, we did

10   rely on the July document because when you look

11   across all the materials that we've cited, we

12   believe that because that's the date before the

13   August 2013 date, and we look across

14   everything.  We believe there was no dispute,

15   factual dispute, about the configuration of

16   that July prototype being before August 2013

17   and satisfying each of the claim limitations.

18        We received a response saying we got that

19   wrong potentially and that there is a dispute,

20   but end of the day, the theory is Markforged

21   did this first.  And in discovery, we pointed

22   to the earliest date we could to put Continuous

23   Composites on notice to see if they had any

24   other dates between August 2013 and March 2013

25   that they could rely on to show an intervening

1    invention or disclosure of the claimed subject

2    matter of this patent.  We didn't find out they

3    couldn't do to that or did not do that until

4    they served their supplemental final

5    contentions on December 21st, the same day we

6    filed our contentions.

7                THE COURT:  What's the difference

8    between what's disclosed in the March 13th

9    provisional application and the prototype in

10   July?

11               MR. WINGFIELD:  One is a physical

12   embodiment, so one is the actual device.  The

13   other are words, so I think this is a --

14               THE COURT:  What I'm getting at,

15   though, if you're telling me they're working

16   seven days a week, 20 hours a day, I'm asking

17   whether the July prototype was a more evolved

18   version of the --

19               MR. WINGFIELD:  It was.  It had

20   features that are not disclosed.

21               THE COURT:  How can that not be

22   unfair to the plaintiff?

23               MR. WINGFIELD:  Your Honor, we cited

24   that prototype in our contentions, and we cited

25   it as continuing work going from March.  Again,

1    this came out in fact discovery, where we

2    didn't -- we knew that Continuous Composites

3    had two dates they were relying on:  An

4    August 2012 date, which we thought was they set

5    this patent and get back to that priority date,

6    and August an 2013 date.  We identified the

7    earliest date that Markforged could allege

8    conception, giving Continuous Composites the

9    opportunity that, if they had some other

10   document, some other evidence between

11   August 2013 and March 2013 to identify as an

12   earlier conception of the plain subject matter

13   of the '660 patent, they could have done so.

14   They had until December 21st of 2022 to do

15   that.  They did not do it.

16        We didn't know it was coming, so we

17   continued to rely on our earliest date, as this

18   is the date that we have.  But we provided

19   notice that there's continuing work continuing

20   work on the invention through that time and

21   cited documents evidencing that, and we were --

22             THE COURT:  I'm sorry.  I think you

23   can agree, though, there's a difference between

24   pointing to a penny, which is the March 13th

25   application, and a dollar, which is the July

1    evolved evolution of that in terms of allowing

2    the plaintiff to evaluate these claims and

3    what's going on here.  This is all completely

4    different.  It is a reduction to practice, as

5    you point out, and it is an evolution of the

6    March 13th patent.  I can't figure out why you

7    wouldn't have told them about this instead of

8    showing some picture in a document and

9    expecting them to deduce it.

10           MR. WINGFIELD:  Your Honor, the

11   reason that we couldn't put a date to the

12   prototype when we served our contentions is

13   because Markforged, during the pendency of the

14   litigation, went through some organizational

15   changes.  There are two people involved in the

16   development of the prototype, Greg Mark and

17   David Benheim.  We're going to get to David

18   Benheim later, but they left the company in

19   January 2022.

20           THE COURT:  When did you find out

21   that you could put a date on the prototype?

22           MR. WINGFIELD:  We did not find that

23   out until after we served our contentions and

24   we worked with David Benheim to prepare for a

25   deposition in January 2023.

1          THE COURT:  Can we agree that would

2     have been the time to update, even belatedly,

3     your contentions to let Plaintiff know what's

4     going on?

5          MR. WINGFIELD:  Your Honor, we could

6     have updated our contentions, but they also get

7     the testimony during Mr. Benheim's deposition.

8          THE COURT:  Okay.  What was given to

9     the expert in terms of the prototype to allow

10    him to conduct some sort of analysis to

11    determine the two different prototypes you're

12    talking about here?

13          MR. WINGFIELD:  He was given

14    Mr. Benheim's testimony and the document that I

15    just referenced and some additional documents

16    that Mr. Benheim produced, including additional

17    pictures and video of the prototype working.

18          THE COURT:  All right.  On page three

19    of your responsive letter, I just wanted to ask

20    you what the point of this was because I

21    couldn't follow.  I wasn't sure.  I shouldn't

22    say I couldn't follow.  I wasn't sure.

23       It says that plaintiff didn't serve any

24    discovery requests specifically seeking

25    information on the 102(g) invalidity theory.

1       What's the point that you're making here?

2               MR. WINGFIELD:  So the point we're

3       making there, this goes to Mr. Benheim.  They

4       made -- Continuous Composites alleges that we

5       failed to disclose Mr. Benheim's involvement

6       with the Mark 1 development, and we were saying

7       they never asked who was involved in the

8       development of the Mark 1.  And what we were

9       required to do -- beyond Mr. Mark.

10              What we were required to do with respect

11      to our invalidity contention is identify who

12      Markforged contends was the inventor of this.

13      We showed provisional applications, both the

14      March 2013 application that discloses the basic

15      functionality of fiber printing and other

16      applications leading up to June, July 2013

17      provisional applications.  Mr. Mark is listed

18      as an inventor.  Those provisionals were

19      written before Mr. Benheim joined the company.

20      He was not an inventor on this.  He was someone

21      who helped Mr. Mark develop the prototype.

22      They never asked who else besides Mr. Mark was

23      involved.

24              And also, in response to another --

25              THE COURT:  There's a mountain of

1    material here, so if you ask me to find it for

2    you right now, I doubt I could, but I thought a

3    saw an interrogatory propounded by Plaintiff to

4    Defendant where Defendant was asked to describe

5    in detail the design process for each of the

6    accused products.  Wouldn't that have covered

7    this here?

8              MR. WINGFIELD:  The accused products,

9    the Mark 1 is not an accused product.  What we

10   did do, Your Honor, what we did do, in the

11   interrogatory, similarly worded -- it was

12   interrogatory number two in the case.  It asked

13   for us to identify all the individuals who were

14   involved in the design.  We did identify

15   Mr. Benheim as someone who was involved in the

16   design of and production of the products

17   beginning in 2013 through leaving the company

18   in 2022.

19         And so that, Your Honor, is Exhibit 15 to

20   DI 145.  It was Markforged's third supplemental

21   responses to interrogatories and pages 8

22   through 11.  There's a chart that particularly

23   says Markforged's "Second Supplemental Response

24   to Interrogatory Number 2" that identifies

25   Mr. Benheim along with Mr. Mark as

1     knowledgeable about the design, development,

2     structure, function, and/or operation of

3     products and components from the period of 2013

4     through 2022, which includes the relevant

5     period here, 2013 and 2014.  But Continuous

6     Composites never asked who was involved in the

7     document of the Mark 1.

8              THE COURT:  Which is more important

9     for Defendant's theory under 102(g) here?  Is

10    it the March 2013 application, or is it the

11    July provisional application, or is it the July

12    prototype?

13             MR. WINGFIELD:  Your Honor, I think

14    they're all equally important, and the reason

15    for it is because the 102(g) analysis begins

16    with conception and you have to show continued

17    with conception, and you have to show continued

18    work throughout until the public disclosure.

19    And these follow-on provisional applications,

20    the prototypes, they show that continued work,

21    diligence, perfection of the invention through

22    to the public disclosure.

23             THE COURT:  I'm going to ask this

24    follow-on question.  My understanding, and

25    please correct me if I'm wrong, I thought I saw

1    some functioning prototype was in use in

2    January 2014 at a convention or something.  Am

3    I remembering that correctly?

4              MR. WINGFIELD:  That's correct.

5    That's the Ruby prototype.

6              THE COURT:  Is what you're saying to

7    me that April, June, and July provisional

8    applications plus the two prototypes are really

9    just evidence that the provisional application

10   hadn't been abandoned, that you were diligent

11   in working on it?  Is that what you're saying,

12   that's all their evidence for, or is there

13   something else, some other element, that you

14   need to use those for?

15             MR. WINGFIELD:  Your Honor, it depends

16   on how Continuous Composites responds to the

17   contention.  We have to show that we invented

18   it first.  The date we're trying to show we

19   invented it before is August of 2013.  There

20   are aspects of the claim that Continuous

21   Composites say that were not in March 2013

22   provisional application.  We are able to say,

23   well, Mr. Mark continued working on this.  He

24   addressed that issue or made it more clear that

25   he had come up with this in March in this

1       follow-on application.  Or we allege when we

2       worked and built the first prototype in July,

3       there it was.  So he had this idea, this

4       conception before the August 2013 date.  But

5       it's all the same theory that Markforged did

6       this first.

7              THE COURT:  You see the issue here,

8       though; right?  Even your explanation to me

9       points out that it might be the case that

10      Plaintiff may say that based on your late

11      disclosure of the July prototype or the April

12      June or July provisionals that there is some

13      difference between those and March 13th, but

14      you didn't give them the opportunity to explore

15      that until expert reports.

16             MR. WINGFIELD:  First, Your Honor,

17      the patents say what they say.  For the

18      provisional application, the words are there.

19      The only person to depose on that is Greg Mark,

20      and Continuous Composites did not seek his

21      deposition.

22             As to the prototype, Continuous

23      Composites was able to explore those

24      differences because they deposed David Benheim,

25      and they asked him several questions about it.

1    Over 40 pages of the deposition testimony are

2    questions from Continuous Composites to David

3    Benheim about the Mark 1.  So we haven't gotten

4    to him yet.

5             THE COURT:  I'm sorry to interrupt

6    again.  At the time of that deposition, can you

7    just clarify for me, were they on notice,

8    explicit notice, I should say, of the two

9    prototypes?

10             MR. WINGFIELD:  The document that

11    says "prototypes" recited and in our

12    contentions.

13             THE COURT:  That's why I said

14    "explicit."

15             MR. WINGFIELD:  But we had not

16    identified a July 2013 date for one of the

17    prototypes.  The other prototype, the Ruby

18    prototype, I believe they were -- they did have

19    some explicit notice of because we identified

20    the prototype, and that was the prototype that

21    was displayed in January of 2014, but that

22    prototype, as Mr. Higgins mentioned, is after

23    the relevant period here, which is August of

24    2013.

25             THE COURT:  Okay.  Okay.

1          Mr. Higgins, do you have something else

2     you'd like to say on this point?

3          MR. HIGGINS:  Probably quite a bit,

4     but I'll try to keep it very short.

5          I do want to point out that this document

6     that Mr. Wingfield has been discussing that

7     happens that somewhere in its 300 pages

8     mentions this prototype, it's cited in a

9     sentence that talks about, among other things,

10    marketing of a printer that became known as the

11    Mark 1.  And then that's only under diligence.

12         In their chart, it says conception

13    reduction to practice.  Greg Mark conceived and

14    reduced to practice an apparatus as reflected

15    in the '235 application March 22, 2013."  That

16    is the theory -- that is the date for

17    conception and reduction to practice, and as a

18    question to Your Honor, and I heard

19    Mr. Wingfield agree, the July 2013 date is a

20    different date for conception and reduction to

21    practice.  It's a different legal theory.  They

22    had notice.

23         The only other points I want to make go

24    to something that was said about when they had

25    knowledge of this, and that goes to

1        Mr. Benheim, so I can get to that next, but

2        it's going to relate to this.  I'll stop there,

3        Your Honor.

4                THE COURT:  No, I appreciate that.  I

5        don't want to cut off your analysis, and if you

6        want to loop into Mr. Benheim and his notebook,

7        that makes sense to me.

8                MR. HIGGINS:  I'll get to the point,

9        the inaccuracy that was stated of when they

10       knew about this.

11               For Mr. Benheim, and I think we've gotten

12       a prelude to this, there were several documents

13       that Dr. Gall relied on as part of his

14       analysis, and Mr. Wingfield even mentions, that

15       supposedly told them about the July 2013

16       prototype and the date.  The first thing to

17       note here, this case was filed July 2021.

18       Mr. Benheim was an employee of Markforged.

19       Mr. Benheim worked at Markforged, as he said in

20       the deposition, through July 2022.  He

21       transitioned to a different role in January of

22       2022.  However, the case was filed at that

23       point.

24               Mr. Benheim was employed by Markforged.

25       All of these documents that Markforged and

1     Mr. Wingfield said they didn't have notice of,

2     they were at Markforged.  They should have been

3     subject to discovery requests, setting aside at

4     least with their invalidity contentions.  But

5     they also should have been subject to a

6     litigation hold, to the extent one was even in

7     place.

8          And I mentioned that, and that's because

9     we know Mr. Benheim testified that Markforged

10    knew of Mr. Benheim's relevance to their

11    invalidity theory and that he possessed

12    relevant documents, and we know this because

13    Mr. Benheim testified that he had a meeting

14    with Markforged's in-house counsel, Jay Cahill,

15    who -- and they discussed his lab notebook and

16    other materials.  Mr. Benheim even testified

17    that he specifically went to Mr. Cahill in

18    January 2022 to see if any of the materials he

19    had "would be helpful to the case."  One of

20    these was the lab notebook that they're now

21    relying on that they said they didn't have

22    knowledge of.

23          This isn't a case where an employee left

24    and documents went away.  These are documents

25    that were purposefully withheld.  A decision

1    was made by Markforged's in-house counsel when

2    he was presented with these documents by

3    Mr. Benheim and the knowledge of Mr. Benheim's

4    relevance, and we heard nothing about it until

5    after fact discovery, after we served a

6    subpoena on Mr. Benheim.  Nothing to do with

7    this.  We had no idea he was involved in the

8    102(g) argument.  We served a subpoena

9    regarding his knowledge of our patents due to

10   some interaction with people at Continuous

11   Composites.

12        And the other fact here, this goes back

13   the in-house counsel, Jay Cahill, who met with

14   Mr. Benheim and made the decision to keep this

15   document back.  He attended Markforged fact

16   depositions during discovery.  He was there.

17   While we're questioning witnesses on what they

18   may know about this, he's sitting there in the

19   deposition, after talking to Mr. Benheim, and

20   not producing this document in January of 2022.

21   So all of this is going on while Markforged has

22   knowledge that they have these documents and

23   this theory, but they're hiding it from us.

24        And then we see their summary judgment

25   motion.  It only relies on a July 2013 date of

1          conception and reduction to practice.  Lo and

2          behold, what do we see?  A lengthy deposition

3          from Mr. Benheim.  A reliance on the video, the

4          lab notebook, all of this information that

5          Mr. Wingfield said they weren't aware of until

6          they had fact discovery, but Mr. Benheim was at

7          Markforged.  He brought it to their in-house

8          counsel.  They withheld it.

9               And to go to a previous point, this is an

10         issue where Continuous Composites doesn't have

11         the burden of proof.  This is Markforged's

12         burden.  They're required by the scheduling

13         order to produce relevant documents to support

14         their invalidity contentions.  We didn't have

15         to ask for it.  We did serve document requests

16         that went to this.

17              But where I come down to on the David

18         Benheim issue, and this relates -- at best for

19         Markforged here, this is all way too late.

20         They knew about Mr. Benheim's lab notebook.

21         They knew about the prototype, his involvement

22         with Markforged.  Mr. Benheim and even

23         Dr. Gall, their expert, testified that

24         Mr. Benheim is a coinventor.

25              But in Markforged's response in the

1     letter, we see no reason, no explanation why it

2     could not have produced these documents in a

3     timely manner and no reason why it failed to

4     identify Mr. Benheim as a person having

5     knowledge.  He wasn't in their initial

6     disclosures.  They served a response to an

7     interrogatory regarding development to the Mark

8     1, and it lists Greg Mark, Keith Durand, and

9     Andrew Karl and doesn't list Mr. Benheim.  And

10    they say they identified him in an

11    interrogatory.  That's something they served on

12    the last day of fact discovery after we served

13    the subpoena, by the way.

14         But so with all of that, the fact that

15    Mr. Benheim is their key witness, they filed

16    for summary judgment.  His declaration, his

17    documents that are supporting it.  It's his

18    date, this new conception reduction to

19    practice.  This is all new.  It should be

20    struck, especially based on the fact it's not

21    just there was something inadvertent.  This was

22    a withholding of relevant information.  There

23    should be consequences to that in terms of

24    precluding what they argue.

25         I think what gets worse for Markforged,

1    when you look at how they withheld this

2    document, it wasn't just they withheld it.  As

3    Mr. Wingfield said, Mr. Benheim left the

4    company.  They allowed him to take this

5    information with him during an active

6    litigation.  While a litigation hold should be

7    in place, he removed these documents from the

8    company.  Markforged said they didn't have

9    them, and Mr. Benheim had to produce them.

10          If that is the case, that's spoliation,

11   and that brings in a whole 'nother issue where,

12   based on Mr. Benheim's testimony, they want to

13   portray him as being this credible witness.  He

14   went forward and said he had relevant materials

15   with in-house counsel and in-house counsel

16   didn't produce it and let Mr. Benheim walk with

17   the document and take it away.  Markforged let

18   relevant information go purposely.  That's

19   spoliation.

20          As a result of that, their 102(g) theory,

21   especially what they put forth in Dr. Gall's

22   report and their summary judgment motion,

23   should be struck and precluded based on this

24   conduct.

25          I'll stop there, Your Honor, if you have

1    any questions.

2              THE COURT:  Thank you, Mr. Higgins.

3    I just want to make sure that I am crystal

4    clear.  You refer to the notebook, but

5    sometimes you said documents.  Are there other

6    things that were not timely produced other than

7    the notebook, or can I refer to it as the

8    notebook, and does that capture what you're

9    talking about?

10             MR. HIGGINS:  There are other

11   documents, basically anything produced by

12   Mr. Benheim.  The other key documents, and

13   Mr. Wingfield alluded this, there's a video of

14   the prototype that Mr. Benheim had at the

15   company during the time of this litigation, and

16   Markforged didn't produce it.  We got that

17   produced from Mr. Benheim, and that video is

18   also what Markforged is relying on in its

19   motion.

20             Those are the two key things.  There's

21   other documents, but the lab notebook and the

22   video are the two key things for this July

23   prototype.

24             THE COURT:  If you had gotten

25   Mr. Benheim's notebook, say, in November of

1    2022, I think fact discovery was still ongoing

2    there, and I could be wrong, so I apologize.

3    If you'd gotten the notebook then, what would

4    you have done in fact discovery that you were

5    precluded in doing by getting the video and

6    notebook out of time and the deposition out of

7    time?

8             MR. HIGGINS:  When we took the

9    deposition of Mr. Benheim, we didn't know that

10   they were putting forth this theory that he was

11   part of the team that developed the prototype

12   or they were using the prototype as conception

13   and reduction to practice.  So I think we would

14   have had to have prepared a whole set of

15   questions for him at the deposition.  We see

16   what comes in the declarations for summary

17   judgment motion.

18        We took his deposition to get his

19   knowledge of Continuous Composite patents while

20   he was at the company.  We had no idea they

21   were putting forth this theory, and

22   Mr. Wingfield acknowledged they hadn't

23   disclosed it yet.  This was also -- would have

24   been prior to claim construction.  The

25   July 2013 prototype is some modified alternator

1    machine.  It's completely different than the

2    other Ruby prototype and the Mark 1.  It's not

3    what was disclosed in the provisional.  There

4    are a lot of moving pieces here, especially

5    this video that purports to show some of its

6    operations and has a questionable date and

7    metadata with it.

8         There's a lot of investigation we would

9    have needed to do on this, both prior to

10   Mr. Benheim's deposition, prior to claim

11   construction, if we could have performed any

12   testing on this during fact discovery prior to

13   expert reports.  There's a whole litany of

14   things we would have wanted to do, and that's

15   taking that as prejudice, setting aside the

16   fact that this was a purposeful withholding.

17             THE COURT:  Okay.  Thank you,

18   Mr. Higgins.

19        So I'm looking at the clock here.  It's

20   3:46.  I think our court reporter deserves a

21   chance to take a breath before her 4:00

22   hearing, so what I would like to do -- but I

23   want to hear from the parties to make sure this

24   is going to work for everyone -- is adjourn for

25   the day, understanding that when we come back

1           I'm going to pick up with questions for

2     Mr. Wingfield about the lab notebook and video,

3     and I'd like to talk about what availability

4     looks like on Monday.  I can be available all

5     day long.  So what time can we resume our

6     hearing?  And let's just assume, for sake of

7     argument, that it will go another hour or hour

8     and a half, just to allow you folks to say what

9     you need to say on these issues.

10          MR. HIGGINS:  This is Chris Higgins

11    for the plaintiff.  I am available prior to

12    3:00 Eastern.

13          THE COURT:  Mr. Wingfield?

14          MR. WINGFIELD:  Yes, Your Honor.  I'm

15    available from 9:00 until 11:30 Monday morning

16    and then again at 2:00 p.m.

17          THE COURT:  Let me give you a moment

18    to confirm whatever method works for you text,

19    or Skype, that Delaware lawyers can also be

20    present if we were to start the hearing at

21    9:00 a.m. on Monday because I think these are

22    important issues, and I think we need to get to

23    them and have them decided promptly.  Take a

24    minute.  When you've had a chance to confer,

25    let me know.

1          MR. HIGGINS:  Your Honor, this is

2     Chris Mr. Higgins for the plaintiff.  Confirmed

3     our Delaware counsel is also available at

4     9:00 a.m. Monday morning.

5          THE COURT:  Fantastic, Mr. Higgins.

6     I appreciate that, and I appreciate no one

7     expected this to go as long as it did, and I

8     think it's important folks have an opportunity

9     to be heard.

10        Mr. Wingfield, have you been able to

11    confirm?

12         MR. WINGFIELD:  I have, Your Honor.

13    9:00 a.m. works for Defendant's counsel as

14    well.

15         THE COURT:  Very good.  Let's adjourn

16    for the day, and we will pick this back up at

17    9:00 a.m.  For my purposes, can we use the same

18    dial-in that we used for today for 9:00 a.m. on

19    Monday?

20         UNIDENTIFIED SPEAKER:  Yes, Your

21    Honor.

22         THE COURT:  Okay.  I will let you

23    know -- we can go off the record.

24         (A discussion was held off the

25    record.)

**C E R T I F I C A T E**

1

2  STATE OF DELAWARE        )
                            ) ss:
3  COUNTY OF NEW CASTLE     )

4          I, Deanna L. Warner, a Certified

5  Shorthand Reporter, do hereby certify that as

6  such Certified Shorthand Reporter, I was

7  present at and reported in Stenotype shorthand

8  the above and foregoing proceedings in Case

9  Number 21-CV-998-MN, *CONTINUOUS COMPOSITES,*

10  *INC. Vs. MARKFORGED, INC.*, heard on

11  August 4, 2023.

12          I further certify that a transcript of

13  my shorthand notes was typed and that the

14  foregoing transcript, consisting of 93

15  typewritten pages, is a true copy of said

16  **MOTION TO STRIKE**.

17          **SIGNED**, **OFFICIALLY SEALED**, and **FILED**

18  with the Clerk of the District Court, [!COUNTY]

19  County, Delaware, this FILE DATE.

20

21  _____

22  Deanna L. Warner, CSR, #1687
    Speedbudget Enterprises, LLC

23

24

25

# #

**#1687** [1] - 93:21

# '

**'109** [1] - 51:16
**'235** [1] - 81:15
**'543** [1] - 51:15
**'660** [10] - 8:14, 25:19, 32:23, 34:16, 40:5, 40:6, 44:20, 51:12, 51:19, 72:13
**'708** [1] - 51:16
**'798** [1] - 51:16
**'nother** [2] - 59:17, 87:11
**'nozzle** [1] - 25:24
**'polymer** [1] - 29:25

# 1

**1** [11] - 62:5, 66:3, 67:18, 75:6, 75:8, 76:9, 77:7, 80:3, 81:11, 86:8, 90:2
**10** [1] - 55:12
**101** [7] - 11:2, 11:5, 11:13, 12:4, 15:20, 16:9, 52:13
**102(g** [12] - 54:24, 55:7, 57:22, 58:23, 67:2, 67:8, 69:3, 74:25, 77:9, 77:15, 84:8, 87:20
**11** [1] - 76:22
**11:30** [1] - 91:15
**12** [1] - 65:4
**13th** [4] - 71:8, 72:24, 73:6, 79:13
**14.2** [2] - 38:15, 41:19
**142** [2] - 6:19, 8:12
**145** [1] - 76:20
**15** [1] - 76:19
**169** [1] - 26:2
**182511** [1] - 48:2

# 2

**2** [6] - 8:13, 25:11, 26:3, 27:15, 32:22, 76:24
**20** [2] - 8:23, 71:16
**2012** [2] - 68:9, 72:4
**2013** [47] - 55:7, 55:13, 56:6, 57:4, 58:24, 59:8, 60:6, 60:14,

59:16, 71:12, 62:2, 62:20, 63:12, 64:24, 65:9, 66:3, 66:24, 67:13, 67:14, 67:22, 68:13, 68:18, 69:7, 69:19, 69:24, 70:13, 70:16, 70:24, 72:6, 72:11, 75:14, 75:16, 76:17, 77:3, 77:5, 77:10, 78:19, 78:21, 79:4, 80:16, 80:24, 81:15, 81:19, 82:15, 84:25, 89:25
**2014** [8] - 55:17, 66:4, 67:19, 69:24, 70:8, 77:5, 78:2, 80:21
**2017** [1] - 48:1
**2021** [2] - 17:14, 82:17
**2022** [10] - 15:25, 65:5, 72:14, 76:18, 77:4, 82:20, 82:22, 83:18, 84:20, 89:1
**2023** [3] - 1:13, 73:25, 93:11
**208** [1] - 45:19
**21** [1] - 65:5
**21-998** [1] - 3:4
**21-CV-998-MN** [2] - 1:5, 93:9
**210** [1] - 45:19
**21st** [4] - 16:24, 17:7, 71:5, 72:14
**22** [1] - 81:15
**22nd** [1] - 73:19
**244834** [1] - 65:14
**244834244925** [1] - 65:8
**25** [1] - 65:7
**26** [1] - 65:7
**2:00** [1] - 91:16

# 3

**3-3A** [1] - 67:7
**30** [1] - 53:25
**300** [1] - 81:7
**3:00** [1] - 91:12
**3:46** [1] - 90:20
**3D** [1] - 41:17

# 4

**4** [9] - 32:23, 44:19, 44:21, 49:19, 49:20, 49:21, 51:11, 51:19, 93:11
**40** [1] - 80:1
**45** [1] - 55:12
**4:00** [2] - 24:25, 90:21

**4A** [1] - 45:8
**4th** [1] - 1:13

# 6

**6** [7] - 15:25, 16:2, 35:17, 36:23, 38:9, 41:9, 45:7
**6th** [1] - 16:12

# 7

**7** [1] - 16:3

# 8

**8** [1] - 76:21

# 9

**9** [2] - 55:12, 55:13
**93** [1] - 93:14
**94** [5] - 9:5, 9:13, 9:20, 10:10, 10:25
**99** [3] - 8:21, 15:25
**9:00** [6] - 91:15, 91:21, 92:4, 92:13, 92:17, 92:18

# A

**a.m** [5] - 91:21, 92:4, 92:13, 92:17, 92:18
**abandoned** [1] - 78:10
**ability** [2] - 37:4, 61:18
**able** [11] - 9:7, 9:22, 10:10, 12:13, 25:2, 40:14, 61:18, 64:4, 78:22, 79:23, 92:10
**absolutely** [2] - 10:23, 26:12
**according** [1] - 40:12
**accordingly** [1] - 29:23
**accused** [10] - 32:8, 33:15, 34:4, 39:3, 41:1, 41:19, 53:1, 76:6, 76:8, 76:9
**acknowledged** [1] - 89:22
**action** [5] - 3:4, 10:19, 42:3, 47:9, 48:12
**actions** [2] - 42:7, 42:14
**active** [3] - 28:25, 31:22, 87:5
**actual** [3] - 56:18,

**add** [14] - 7:17, 7:20, 9:18, 12:8, 12:17, 13:20, 14:19, 14:23, 22:17, 23:17, 23:18, 23:21, 23:23, 23:25
**added** [7] - 11:19, 11:20, 11:22, 11:25, 58:5, 59:10, 60:21
**adding** [2] - 23:5, 23:11
**additional** [12] - 6:8, 6:10, 12:24, 18:24, 19:10, 21:21, 29:25, 43:21, 44:5, 59:10, 74:15, 74:16
**address** [11] - 6:3, 19:4, 20:9, 20:10, 21:14, 39:13, 43:14, 44:15, 45:2, 48:21, 54:22
**addressed** [6] - 9:7, 11:16, 20:4, 28:18, 32:11, 78:24
**addressing** [2] - 29:7, 54:3
**adds** [1] - 17:10
**adjourn** [2] - 90:24, 92:15
**admit** [2] - 28:4, 48:3
**admitted** [2] - 45:5, 58:16
**adopt** [1] - 20:19
**advocating** [1] - 67:9
**afforded** [1] - 24:21
**afield** [1] - 22:11
**afternoon** [3] - 3:1, 3:12, 4:19
**afterthought** [1] - 24:10
**ago** [1] - 46:19
**agree** [10] - 5:23, 6:2, 6:16, 13:5, 13:6, 21:4, 23:25, 72:23, 74:1, 81:19
**agreed** [4] - 18:18, 23:20, 56:22, 58:10
**agreement** [3] - 16:25, 23:17, 23:20
**ahead** [2] - 5:18, 46:8
**allege** [2] - 72:7, 79:1
**alleged** [1] - 38:11
**alleges** [1] - 75:4
**alleging** [1] - 22:7
**allow** [2] - 74:9, 91:8
**allowed** [4] - 11:18, 38:13, 52:20, 87:4
**allowing** [1] - 73:1
**alluded** [2] - 38:11, 88:13

**alluding** [1] - 11:16
**almost** [1] - 46:19
**alternator** [1] - 89:25
**altogether** [1] - 60:12
**amend** [6] - 6:7, 6:11, 7:25, 8:1, 47:10, 48:17
**amended** [3] - 9:16, 11:1, 15:21
**amending** [1] - 17:3
**amendment** [1] - 27:23
**amounts** [1] - 7:21
**analysis** [5] - 69:3, 74:10, 77:15, 82:5, 82:14
**AND** [1] - 1:2
**Andrew** [1] - 86:9
**answer** [2] - 58:7, 59:4
**apologies** [1] - 4:5
**apologize** [4] - 11:8, 18:11, 40:18, 89:2
**app** [1] - 68:17
**apparatus** [9] - 34:18, 34:24, 34:25, 35:6, 35:7, 35:25, 37:18, 48:7, 81:14
**appear** [1] - 16:10
**APPEARANCES** [1] - 1:15
**Appearances** [1] - 2:1
**appearing** [1] - 3:9
**application** [18] - 53:23, 55:8, 55:14, 58:25, 59:24, 61:22, 67:24, 68:10, 71:9, 72:25, 75:14, 77:10, 77:11, 78:9, 78:22, 79:1, 79:18, 81:15
**applications** [15] - 56:1, 56:12, 56:18, 57:3, 59:11, 64:17, 66:6, 66:8, 66:16, 69:13, 75:13, 75:16, 75:17, 77:19, 78:8
**applies** [4] - 5:24, 6:2, 6:6, 6:12
**apply** [4] - 6:10, 6:16, 27:5, 41:11
**applying** [2] - 32:2, 39:22
**appreciate** [14] - 10:23, 12:2, 24:12, 28:8, 29:18, 30:22, 43:10, 49:13, 53:6, 53:20, 54:11, 82:4, 92:6
**appreciated** [2] - 43:22, 44:8
**approached** [2] -

56:10, 56:20
**April** [3] - 57:4, 78:7, 79:11
**argue** [14] - 4:25, 9:7, 9:17, 9:22, 10:11, 10:14, 12:13, 13:4, 24:22, 34:7, 35:22, 42:21, 48:14, 86:24
**argued** [6] - 8:25, 9:3, 11:18, 11:24, 27:10, 27:15
**argues** [1] - 29:23
**arguing** [3] - 30:3, 34:1, 34:13
**argument** [40] - 4:12, 5:8, 10:23, 12:11, 13:14, 13:18, 22:13, 24:3, 24:5, 24:18, 25:7, 26:22, 27:8, 28:5, 28:8, 31:24, 32:16, 33:14, 34:8, 35:10, 36:10, 42:25, 45:20, 46:4, 46:5, 47:4, 47:14, 47:16, 47:21, 49:14, 52:3, 54:19, 54:24, 54:25, 55:7, 60:6, 68:14, 68:19, 84:8, 91:7
**arguments** [9] - 5:7, 23:7, 24:13, 48:11, 56:2, 60:15, 61:25, 62:1, 62:24
**arrows** [1] - 54:7
**ARSHT** [1] - 2:2
**art** [8] - 25:16, 25:23, 57:22, 59:15, 59:19, 60:19, 62:20, 67:8
**article** [1] - 22:8
**aside** [5] - 34:6, 59:17, 63:3, 83:3, 90:15
**aspects** [1] - 78:20
**assert** [1] - 24:23
**asserted** [5] - 8:14, 40:4, 41:7, 55:2, 55:10
**assertion** [2] - 41:3, 41:5
**asserts** [1] - 40:24
**assume** [4] - 15:3, 30:10, 68:9, 91:6
**attached** [2] - 26:3, 63:10
**attended** [1] - 84:15
**August** [13] - 1:13, 56:5, 68:12, 70:13, 70:16, 70:24, 72:4, 72:6, 72:11, 78:19, 79:4, 80:23, 93:11
**availability** [1] - 91:3
**available** [4] - 91:4,

---

91:11, 91:15, 92:3
**aware** [7] - 17:21, 20:3, 50:23, 52:24, 53:12, 64:21, 85:5

## B

**backup** [1] - 17:1
**balance** [1] - 24:20
**baldly** [1] - 50:15
**ball** [1] - 5:22
**based** [19] - 13:14, 13:24, 16:9, 20:1, 20:12, 20:16, 20:20, 22:7, 27:24, 29:24, 30:15, 46:17, 59:8, 62:13, 63:1, 79:10, 86:20, 87:12, 87:23
**basic** [2] - 69:15, 75:14
**basis** [2] - 9:10, 12:15
**Bates** [1] - 65:8
**bear** [1] - 28:24
**bearing** [1] - 65:8
**bears** [1] - 45:13
**became** [1] - 81:10
**begin** [1] - 4:22
**beginning** [5] - 6:3, 17:11, 39:24, 69:19, 76:17
**begins** [1] - 77:15
**behalf** [4] - 3:9, 3:14, 3:24, 4:2
**behold** [1] - 85:2
**belatedly** [1] - 74:2
**benefit** [1] - 24:11
**Benheim** [41] - 61:2, 63:23, 69:18, 73:17, 73:18, 73:24, 74:16, 75:3, 75:19, 76:15, 76:25, 79:24, 80:2, 82:1, 82:6, 82:11, 82:18, 82:19, 82:24, 83:9, 83:13, 83:16, 84:3, 84:6, 84:14, 84:19, 85:3, 85:6, 85:18, 85:22, 85:24, 86:4, 86:9, 86:15, 87:3, 87:9, 87:16, 88:12, 88:14, 88:17, 89:9
**Benheim's** [11] - 60:2, 61:4, 74:7, 74:14, 75:5, 83:10, 84:3, 85:20, 87:12, 88:25, 90:10
**best** [1] - 85:18
**better** [1] - 7:11
**between** [7] - 37:22,

---

68:12, 70:24, 71:8, 72:10, 72:23, 79:13
**beyond** [4] - 10:21, 26:11, 33:18, 75:9
**bit** [5] - 30:19, 30:22, 30:23, 61:16, 81:3
**black** [1] - 66:19
**bleeding** [1] - 38:3
**blew** [1] - 7:11
**block** [1] - 54:9
**boat** [1] - 57:1
**boilerplate** [1] - 45:17
**bound** [3] - 31:1, 31:3, 31:8
**bounds** [1] - 53:10
**Bova** [1] - 4:10
**BOVA** [1] - 2:6
**breath** [1] - 90:21
**brief** [10] - 8:11, 13:23, 14:19, 19:18, 19:23, 26:4, 44:18, 47:17, 48:1, 63:4
**briefed** [1] - 28:18
**briefing** [2] - 16:21, 29:13
**briefly** [2] - 31:13, 43:16
**bring** [1] - 18:24
**bringing** [1] - 36:2
**brings** [2] - 6:7, 87:11
**brought** [4] - 13:9, 53:14, 54:5, 85:7
**built** [1] - 79:2
**bulk** [1] - 39:1
**burden** [4] - 45:13, 50:1, 85:11, 85:12
**buy** [1] - 13:8
**BY** [2] - 1:16, 1:22

## C

**Cahill** [2] - 83:14, 84:13
**cahill** [1] - 83:17
**California** [1] - 67:6
**Calvin** [2] - 4:9, 4:16
**CALVIN** [1] - 2:5
**cannot** [1] - 8:17
**capable** [3] - 38:13, 39:18, 39:20
**capture** [1] - 88:8
**care** [2] - 42:19, 53:21
**case** [26] - 7:3, 7:19, 8:3, 19:6, 22:3, 26:18, 34:20, 38:5, 46:9, 47:8, 47:25, 52:2, 52:5, 52:7, 52:9, 52:23, 55:22, 62:9, 68:22, 76:12,

---

79:9, 82:17, 82:22, 83:19, 83:23, 87:10
**Case** [2] - 1:5, 93:8
**caselaw** [2] - 33:2, 48:8
**cases** [2] - 23:22, 64:8
**CASTLE** [1] - 93:3
**catch** [1] - 11:7
**certain** [4] - 38:12, 44:2, 61:3, 70:2
**certainly** [3] - 10:24, 12:22, 21:5
**Certified** [2] - 93:4, 93:6
**certify** [2] - 93:5, 93:12
**chance** [2] - 90:21, 91:24
**change** [4] - 40:13, 44:2, 60:20, 63:19
**changed** [2] - 46:18, 54:16
**changes** [1] - 73:15
**changing** [1] - 63:21
**chart** [17] - 8:23, 9:4, 9:6, 9:13, 9:16, 9:21, 10:10, 11:15, 12:7, 15:21, 24:8, 26:19, 39:3, 42:13, 63:10, 76:22, 81:12
**charts** [2] - 11:1, 63:11
**choice** [1] - 24:6
**chopped** [1] - 37:2
**Chris** [3] - 5:5, 91:10, 92:2
**CHRISTOPHER** [1] - 1:22
**Christopher** [1] - 3:17
**circumstances** [1] - 67:11
**citation** [2] - 23:23, 65:7
**citations** [2] - 23:5, 23:21
**cite** [5] - 23:14, 65:1, 66:11, 67:24, 68:2
**cited** [19] - 9:5, 9:13, 47:25, 54:6, 57:3, 60:22, 62:20, 64:25, 65:2, 65:25, 67:19, 67:21, 69:20, 69:21, 70:11, 71:23, 71:24, 72:21, 81:8
**cites** [2] - 28:23, 52:1
**citing** [1] - 23:12
**civil** [1] - 3:4
**Claim** [8] - 8:13, 25:10, 27:14, 32:22, 32:23, 44:19, 44:21,

---

49:19, 49:20, 49:21, 51:11, 51:19
**claim** [61] - 8:17, 8:23, 9:12, 13:24, 15:21, 17:12, 19:4, 19:18, 20:14, 24:8, 26:13, 26:25, 27:6, 27:10, 27:16, 28:14, 30:15, 30:16, 31:24, 32:1, 32:3, 32:22, 35:7, 35:18, 37:15, 37:18, 37:21, 38:20, 39:2, 39:6, 39:8, 39:23, 41:21, 42:13, 44:20, 45:8, 45:15, 47:5, 47:12, 47:13, 47:18, 47:21, 47:24, 48:5, 48:7, 50:16, 51:1, 52:3, 52:8, 54:1, 54:4, 59:6, 61:24, 63:10, 63:11, 70:17, 78:20, 89:24, 90:10
**claimed** [3] - 66:23, 67:16, 71:1
**claims** [24] - 11:3, 11:11, 12:25, 24:4, 34:14, 34:18, 34:19, 34:21, 34:24, 35:3, 38:15, 39:10, 53:3, 55:2, 55:10, 55:15, 59:20, 60:7, 62:4, 69:6, 69:16, 70:2, 73:2
**clarify** [2] - 30:12, 80:7
**cleaner** [1] - 65:22
**clear** [13] - 5:22, 26:16, 27:24, 29:19, 30:2, 35:4, 40:23, 42:2, 57:24, 65:19, 65:24, 78:24, 88:4
**clearly** [3] - 23:13, 36:12, 49:7
**Clerk** [1] - 93:18
**clock** [1] - 90:19
**close** [1] - 19:5
**co** [3] - 3:16, 4:8, 23:7
**co-counsel** [2] - 3:16, 4:8
**co-counsel's** [1] - 23:7
**coinventor** [1] - 85:24
**column** [1] - 36:25
**combine** [1] - 26:1
**combined** [1] - 25:21
**coming** [4] - 29:10, 29:11, 61:24, 72:16
**comment** [1] - 15:1
**comments** [2] - 10:8, 46:1
**commercialized** [1] -

55:16
**common** [3] - 6:25, 44:17, 69:25
**companion** [1] - 17:24
**company** [9] - 64:2, 69:11, 73:18, 75:19, 76:17, 87:4, 87:8, 88:15, 89:20
**comparing** [1] - 58:2
**complaining** [1] - 55:23
**complete** [1] - 64:10
**completely** [2] - 73:3, 90:1
**complying** [1] - 7:2
**component** [4] - 38:10, 50:14, 50:19, 50:25
**components** [4] - 26:14, 39:4, 70:3, 77:3
**composite** [1] - 25:22
**Composite** [1] - 89:19
**Composites** [38] - 3:3, 3:15, 17:15, 17:21, 18:1, 20:8, 21:12, 21:13, 21:24, 28:16, 29:2, 39:5, 40:2, 40:17, 43:19, 43:20, 44:4, 45:13, 50:1, 50:2, 50:23, 51:17, 52:24, 53:5, 53:9, 67:13, 70:23, 72:2, 72:8, 75:4, 77:6, 78:16, 78:21, 79:20, 79:23, 80:2, 84:11, 85:10
**COMPOSITES** [2] - 1:3, 93:9
**Composites'** [4] - 21:18, 50:13, 51:4, 51:13
**comprised** [1] - 37:1
**conceived** [2] - 66:22, 81:13
**conception** [25] - 55:8, 55:14, 56:13, 56:15, 59:1, 59:7, 59:20, 59:24, 60:7, 60:11, 62:4, 62:21, 63:13, 67:22, 72:8, 72:12, 77:16, 77:17, 79:4, 81:12, 81:17, 81:20, 85:1, 86:18, 89:12
**concerning** [1] - 20:11
**concession** [2] - 21:24, 22:13
**conduct** [3] - 52:22, 74:10, 87:24

**confer** [1] - 91:24
**configuration** [2] - 40:14, 70:15
**configurations** [1] - 43:5
**configure** [2] - 40:11, 42:24
**configured** [19] - 25:12, 25:17, 25:24, 31:17, 32:20, 32:21, 32:25, 33:1, 33:3, 33:4, 33:11, 35:21, 36:15, 38:14, 39:15, 39:20, 41:21, 44:22, 44:23
**configures** [2] - 41:1, 42:16
**confirm** [2] - 91:18, 92:11
**confirmed** [1] - 92:2
**consequences** [1] - 86:23
**consider** [3] - 15:8, 37:19, 62:23
**considered** [1] - 10:3
**consistent** [1] - 29:6
**consisting** [1] - 93:14
**constantly** [1] - 63:21
**constitute** [1] - 57:21
**constitutes** [1] - 35:7
**construction** [45] - 8:23, 9:13, 10:2, 12:25, 13:4, 13:25, 15:21, 16:14, 16:19, 16:20, 17:8, 17:9, 17:12, 18:2, 18:5, 18:6, 19:4, 19:6, 19:18, 20:4, 20:9, 20:14, 20:17, 20:20, 21:12, 22:6, 23:11, 26:17, 26:20, 27:7, 27:11, 27:17, 28:14, 29:24, 30:4, 30:16, 30:25, 31:16, 31:24, 32:1, 32:13, 61:24, 89:24, 90:11
**constructions** [2] - 7:10, 8:18
**construe** [1] - 62:8
**construed** [2] - 13:10, 16:17
**construes** [1] - 13:13
**contain** [1] - 59:2
**contending** [1] - 59:6
**contends** [1] - 75:12
**contention** [17] - 17:2, 21:14, 23:9, 34:16, 35:18, 38:2, 42:15, 56:9, 58:11, 63:8, 68:1, 68:3, 68:24,

70:4, 75:11, 78:17, 80:12
**contentions** [95] - 6:5, 8:1, 12:10, 12:16, 13:12, 16:24, 17:4, 17:6, 18:13, 18:15, 18:17, 18:21, 18:22, 19:3, 23:23, 24:8, 26:6, 26:13, 26:24, 27:22, 28:19, 33:9, 33:24, 34:9, 35:2, 36:8, 36:12, 36:24, 39:25, 40:2, 40:3, 40:16, 42:5, 43:2, 43:4, 43:23, 45:6, 45:8, 45:12, 45:17, 45:21, 46:5, 46:17, 46:19, 48:3, 48:24, 49:25, 50:5, 50:14, 51:4, 51:14, 51:18, 53:4, 54:1, 54:10, 55:6, 55:11, 55:20, 55:23, 56:3, 56:4, 56:8, 56:23, 57:13, 57:17, 57:20, 58:4, 58:18, 59:2, 59:6, 60:9, 60:13, 60:23, 61:23, 62:25, 63:12, 65:2, 65:3, 65:4, 65:6, 66:4, 66:10, 66:12, 66:19, 67:2, 71:5, 71:6, 71:24, 73:12, 73:23, 74:3, 74:6, 83:4, 85:14
**context** [1] - 55:5
**continue** [1] - 24:15
**continued** [10] - 2:1, 69:3, 69:8, 69:11, 70:5, 72:17, 77:16, 77:17, 77:20, 78:23
**continues** [1] - 67:17
**continuing** [4] - 66:1, 71:25, 72:19
**continuous** [9] - 33:12, 33:17, 34:5, 34:14, 37:3, 38:10, 41:18, 42:17, 89:19
**Continuous** [42] - 3:3, 3:15, 17:15, 17:21, 18:1, 20:8, 21:12, 21:13, 21:18, 21:24, 28:15, 29:2, 39:5, 40:2, 40:17, 43:19, 43:20, 44:4, 45:12, 49:25, 50:1, 50:13, 50:23, 51:3, 51:13, 51:16, 52:24, 53:4, 53:9, 67:13, 70:22, 72:2, 72:8, 75:4, 77:5, 78:16, 78:20,

79:20, 79:22, 80:2, 84:10, 85:10
**CONTINUOUS** [2] - 1:3, 93:9
**contrary** [1] - 28:13
**convention** [1] - 78:2
**copied** [4] - 35:18, 42:11, 53:16, 54:2
**copy** [1] - 93:15
**core** [1] - 69:15
**corollary** [1] - 17:25
**correct** [4] - 30:4, 30:5, 77:25, 78:4
**correcting** [1] - 15:18
**correctly** [2] - 53:16, 78:3
**counsel** [16] - 1:23, 3:1, 3:5, 3:16, 4:8, 13:2, 21:19, 25:4, 83:14, 84:1, 84:13, 85:8, 87:15, 92:3, 92:13
**Counsel** [1] - 2:7
**counsel's** [1] - 23:7
**County** [1] - 93:19
**COUNTY** [2] - 93:3, 93:18
**couple** [2] - 12:6, 52:5
**course** [4] - 10:19, 26:10, 47:8, 48:12
**court** [2] - 24:24, 90:20
**COURT** [77] - 1:1, 3:1, 3:8, 3:22, 4:11, 4:18, 5:11, 5:16, 6:13, 6:17, 10:22, 11:10, 12:2, 12:18, 13:17, 15:1, 15:12, 18:10, 20:22, 21:1, 21:4, 22:10, 22:23, 24:12, 28:3, 29:17, 30:8, 30:19, 31:12, 32:15, 36:20, 37:23, 40:18, 41:6, 41:10, 41:24, 43:8, 43:16, 44:10, 49:12, 53:19, 54:20, 58:21, 61:7, 61:13, 64:14, 64:20, 65:13, 66:5, 66:9, 66:13, 68:6, 71:7, 71:14, 71:21, 72:22, 73:20, 74:1, 74:8, 74:18, 75:25, 77:8, 77:23, 78:6, 79:7, 80:5, 80:13, 80:25, 82:4, 88:2, 88:24, 90:17, 91:13, 91:17, 92:5, 92:15, 92:22
**Court** [14] - 8:3, 13:13, 16:7, 16:11, 16:20,

20:19, 28:18, 30:17, 31:23, 32:14, 46:14, 52:2, 52:17, 93:18
**Court's** [1] - 15:25
**Courts** [3] - 39:15, 60:14, 67:25
**courts** [1] - 67:3
**covered** [2] - 69:16, 76:6
**cram** [1] - 46:21
**credible** [1] - 87:13
**cross** [1] - 4:20
**cross-motions** [1] - 4:20
**crystal** [2] - 29:19, 88:3
**CSR** [1] - 93:21
**curable** [8] - 17:17, 17:20, 18:4, 18:7, 21:17, 21:23, 22:1, 22:7
**cure** [3] - 14:16, 46:2, 61:18
**cured** [1] - 20:7
**customer** [3] - 33:21, 34:2, 42:4
**customers** [3] - 33:11, 35:12, 40:10
**cut** [3] - 46:11, 57:6, 82:5
**cut-and-dry** [1] - 57:6
**cutting** [1] - 40:19

**D**

**date** [35] - 18:22, 25:3, 59:7, 60:13, 60:16, 60:19, 61:21, 62:16, 62:19, 67:12, 68:9, 68:18, 69:1, 70:12, 70:13, 70:22, 72:4, 72:5, 72:6, 72:7, 72:17, 72:18, 73:11, 73:21, 78:18, 79:4, 80:16, 81:16, 81:19, 81:20, 82:16, 84:25, 86:18, 90:6
**DATE** [1] - 93:19
**dated** [1] - 62:18
**dates** [3] - 23:9, 70:24, 72:3
**Daubert** [2] - 28:17, 30:7
**David** [7] - 61:2, 73:17, 73:24, 79:24, 80:2, 85:17
**days** [3] - 12:6, 63:4, 71:16
**deadlines** [1] - 7:12

**dealing** [5] - 6:4, 34:10, 37:12, 37:16, 68:11
**deals** [1] - 14:5
**Deanna** [2] - 93:4, 93:21
**December** [9] - 15:25, 16:12, 16:24, 17:6, 18:18, 18:23, 65:3, 71:5, 72:14
**decided** [1] - 91:23
**decides** [1] - 20:19
**decision** [3] - 9:1, 83:25, 84:14
**declaration** [8] - 14:4, 14:18, 15:2, 15:11, 19:11, 23:15, 23:18, 86:16
**declarations** [1] - 89:16
**deduce** [1] - 73:9
**defendant** [12] - 4:7, 9:18, 13:2, 13:3, 26:7, 29:23, 41:3, 52:18, 52:21, 58:22, 76:4
**Defendant** [5] - 1:7, 2:7, 7:2, 10:3, 40:24
**defendant's** [3] - 21:6, 77:9, 92:13
**Defendants** [1] - 41:1
**defendants** [3] - 3:25, 4:3, 21:11
**definitely** [1] - 14:11
**definition** [3] - 19:17, 20:1, 28:9
**Delaware** [8] - 3:10, 3:25, 4:3, 66:25, 67:5, 91:19, 92:3, 93:19
**DELAWARE** [2] - 1:2, 93:2
**delay** [1] - 14:17
**demonstrated** [1] - 69:24
**demonstrates** [1] - 27:16
**denied** [1] - 9:2
**dependent** [1] - 55:3
**depose** [5] - 14:11, 20:11, 45:23, 46:7, 79:19
**deposed** [4] - 18:3, 43:19, 53:5, 79:24
**deposition** [24] - 17:4, 18:6, 18:19, 23:5, 23:13, 23:14, 23:22, 28:24, 50:22, 57:8, 57:10, 73:25, 74:7, 79:21, 80:1, 80:6,

82:20, 84:19, 85:2, 89:6, 89:9, 89:15, 89:18, 90:10
**depositions** [3] - 18:20, 19:1, 84:16
**describe** [1] - 76:4
**deserves** [1] - 90:20
**design** [5] - 39:17, 76:5, 76:14, 76:16, 77:1
**designed** [9] - 33:5, 33:12, 34:4, 34:25, 35:12, 35:25, 36:9, 37:18, 39:21
**designing** [1] - 39:16
**designs** [1] - 42:15
**despite** [1] - 56:8
**detail** [2] - 67:1, 76:5
**determine** [1] - 74:11
**determined** [1] - 52:17
**develop** [1] - 75:21
**developed** [1] - 89:11
**development** [5] - 73:16, 75:6, 75:8, 77:1, 86:7
**device** [5] - 55:17, 59:19, 60:10, 65:21, 71:12
**devices** [5] - 59:16, 60:18, 65:19, 65:20, 65:25
**DI** [15] - 6:19, 9:5, 9:13, 9:20, 10:10, 10:25, 11:2, 11:5, 11:13, 12:4, 15:20, 15:25, 16:8, 52:13, 76:20
**dial** [1] - 92:18
**dial-in** [1] - 92:18
**difference** [5] - 21:9, 68:12, 71:7, 72:23, 79:13
**differences** [1] - 79:24
**different** [28] - 24:4, 25:10, 25:25, 46:24, 47:12, 47:13, 47:14, 48:5, 48:6, 51:23, 52:11, 54:3, 58:4, 59:21, 59:22, 60:12, 62:14, 62:15, 62:16, 65:25, 73:4, 74:11, 81:20, 81:21, 82:21, 90:1
**diligence** [11] - 6:7, 7:15, 7:24, 8:3, 46:14, 46:20, 48:18, 64:10, 69:3, 77:21, 81:14
**diligent** [1] - 78:10
**direct** [12] - 35:24,

37:14, 37:17, 38:6, 38:23, 38:25, 40:3, 41:12, 41:15, 42:4, 42:19, 43:1
**directly** [1] - 42:25
**disclose** [2] - 64:4, 75:5
**disclosed** [22] - 6:4, 14:10, 23:8, 25:18, 26:6, 30:18, 36:12, 36:14, 38:4, 40:16, 46:9, 49:4, 58:16, 59:9, 60:9, 60:13, 64:5, 64:13, 71:8, 71:20, 89:23, 90:3
**discloses** [3] - 29:5, 62:7, 75:14
**disclosing** [1] - 44:9
**disclosure** [10] - 27:25, 53:12, 62:2, 62:15, 66:22, 69:4, 71:1, 77:18, 77:22, 79:11
**disclosures** [2] - 69:17, 86:6
**discovered** [1] - 8:5
**discovery** [28] - 6:5, 14:10, 16:25, 18:23, 19:5, 22:9, 23:4, 24:7, 36:4, 43:21, 44:5, 44:7, 47:9, 55:21, 62:10, 63:18, 64:17, 70:21, 72:1, 74:24, 83:3, 84:5, 84:16, 85:6, 86:12, 89:1, 89:4, 90:12
**discussed** [4] - 19:19, 39:2, 69:21, 83:15
**discusses** [2] - 65:10, 65:12
**discussing** [2] - 23:2, 81:6
**discussion** [4] - 16:6, 39:8, 51:10, 92:24
**discussions** [1] - 16:9
**dismissal** [1] - 22:2
**displayed** [2] - 69:23, 80:21
**dispositive** [7] - 11:4, 11:12, 15:24, 16:6, 19:7, 23:19, 63:3
**dispute** [20] - 14:1, 17:18, 17:20, 18:25, 29:1, 31:23, 32:10, 33:23, 43:24, 44:4, 45:21, 49:23, 51:21, 53:13, 53:15, 57:6, 57:7, 70:14, 70:15, 70:19
**disputed** [4] - 26:20,

33:4, 33:15, 47:6
**disputing** [2] - 47:23, 47:24
**disregard** [1] - 7:18
**disregarded** [1] - 7:12
**distinction** [1] - 37:22
**distinctions** [1] - 52:5
**DISTRICT** [2] - 1:1, 1:2
**District** [4] - 67:5, 67:6, 93:18
**district** [3] - 6:6, 47:20, 48:1
**docket** [2] - 8:11, 8:20
**document** [22] - 54:6, 64:17, 65:1, 65:8, 65:9, 66:1, 66:7, 66:14, 67:21, 68:2, 70:10, 72:10, 73:8, 74:14, 77:7, 80:10, 81:5, 84:15, 84:20, 85:15, 87:2, 87:17
**documents** [22] - 28:24, 60:3, 61:5, 65:15, 67:20, 72:21, 74:15, 82:12, 82:25, 83:12, 83:24, 84:2, 84:22, 85:13, 86:2, 86:17, 87:7, 88:5, 88:11, 88:12, 88:21
**dollar** [1] - 72:25
**done** [8] - 14:16, 23:19, 23:22, 40:8, 40:9, 40:10, 72:13, 89:4
**doubly** [1] - 12:12
**doubt** [1] - 76:2
**down** [2] - 16:13, 85:17
**Dr** [59] - 13:15, 14:8, 19:14, 20:1, 20:3, 20:5, 20:11, 25:13, 26:25, 27:1, 27:4, 27:13, 27:20, 28:1, 28:14, 29:4, 29:16, 30:13, 30:14, 31:5, 31:15, 31:18, 31:25, 32:11, 33:25, 35:14, 35:19, 35:22, 36:1, 40:9, 42:22, 43:17, 43:18, 43:19, 45:10, 45:18, 50:8, 50:13, 51:5, 51:7, 55:25, 56:11, 57:8, 57:14, 58:15, 59:10, 60:21, 61:5, 62:11, 63:16, 65:10, 65:11, 69:1, 69:14, 82:13, 85:23, 87:21
**drawing** [1] - 54:7
**dropped** [1] - 34:20

**dry** [1] - 57:6
**due** [3] - 24:9, 63:4, 84:9
**Durand** [1] - 86:8
**during** [19] - 6:5, 9:8, 14:10, 16:6, 18:5, 18:25, 21:17, 22:8, 27:10, 36:4, 47:9, 57:9, 63:18, 73:13, 74:7, 84:16, 87:5, 88:15, 90:12

## E

**e-mail** [1] - 23:7
**earliest** [1] - 67:12, 67:14, 68:8, 68:13, 69:1, 70:22, 72:7, 72:17
**early** [2] - 66:23, 69:24
**eastern** [1] - 91:12
**Eastern** [1] - 67:6
**easy** [1] - 30:9
**efficiently** [1] - 24:16
**eight** [1] - 15:23
**either** [8] - 5:6, 5:9, 5:15, 12:11, 19:20, 20:3, 48:10, 57:20
**element** [14] - 25:11, 26:14, 35:19, 37:15, 39:8, 42:13, 45:8, 48:3, 49:2, 54:2, 54:3, 54:4, 54:8, 78:13
**elements** [5] - 32:22, 45:15, 46:18, 47:5, 47:13
**embodied** [1] - 55:16
**embodiment** [1] - 71:12
**emit** [6] - 25:12, 25:17, 25:24, 28:22, 31:17, 44:22
**emits** [1] - 28:22
**emitted** [1] - 25:22
**employed** [1] - 82:24
**employee** [2] - 82:18, 83:23
**employees** [2] - 14:5, 69:10
**enabled** [1] - 59:20
**end** [7] - 7:6, 9:19, 11:7, 24:18, 36:25, 40:25, 70:20
**end-users** [1] - 40:25
**enter** [2] - 25:20, 26:14
**entered** [1] - 7:3
**Enterprises** [1] -

93:22
**entire** [1] - 46:9
**entirely** [4] - 23:25, 26:5, 28:2, 45:19
**entry** [2] - 8:11, 8:21
**equally** [1] - 77:14
**especially** [4] - 49:6, 86:20, 87:21, 90:4
**ESQ** [7] - 1:16, 1:19, 1:19, 1:22, 2:3, 2:5, 2:6
**essentially** [1] - 21:23
**establish** [2] - 35:11, 39:19
**evaluate** [3] - 59:18, 62:23, 73:2
**evaluating** [2] - 61:23, 62:6
**evaluation** [1] - 59:22
**evidence** [8] - 18:24, 21:16, 21:21, 52:23, 59:3, 72:10, 78:9, 78:12
**evidenced** [1] - 52:12
**evidencing** [2] - 67:22, 72:21
**evolution** [2] - 73:1, 73:5
**evolved** [2] - 71:17, 73:1
**exact** [2] - 42:12, 56:25
**exactly** [1] - 30:14
**example** [3] - 32:24, 35:17, 42:4
**excuse** [1] - 66:17
**exemplify** [1] - 7:4
**Exhibit** [5] - 26:3, 35:17, 36:23, 38:9, 41:9, 45:7, 55:13, 65:4, 76:19
**exhibit** [1] - 45:9
**exhibits** [1] - 35:16
**Exhibits** [1] - 55:12
**existence** [1] - 64:21
**expect** [2] - 10:11, 45:22
**expected** [1] - 92:7
**expecting** [1] - 73:9
**expert** [30] - 4:21, 7:19, 10:6, 10:14, 10:17, 14:15, 19:14, 20:5, 20:23, 22:5, 25:13, 28:15, 29:4, 31:18, 33:25, 45:23, 46:7, 46:8, 48:13, 48:22, 49:5, 53:8, 57:8, 57:15, 58:14, 63:18, 74:9, 79:15, 85:23, 90:13

**explain** [1] - 50:6
**explained** [3] - 29:14, 50:2, 50:24
**explains** [1] - 29:4
**explanation** [6] - 50:7, 50:17, 51:2, 54:7, 79:8, 86:1
**explicit** [2] - 80:8, 80:14, 80:19
**explore** [2] - 79:14, 79:23
**expounding** [1] - 70:6
**extent** [3] - 26:19, 29:23, 83:6

## F

**fact** [37] - 6:5, 14:10, 14:19, 16:25, 17:4, 18:5, 18:19, 18:23, 19:1, 19:5, 19:11, 22:8, 23:3, 24:7, 31:4, 31:8, 36:4, 47:3, 50:22, 52:22, 54:11, 55:21, 62:10, 72:1, 84:5, 84:12, 84:15, 85:6, 86:12, 86:14, 86:20, 89:1, 89:4, 90:12, 90:16
**factors** [13] - 5:24, 6:9, 6:10, 6:12, 6:16, 8:6, 8:8, 13:22, 43:14, 46:12, 46:13, 48:15, 59:23
**facts** [4] - 33:22, 35:10, 35:11, 43:25
**factual** [1] - 70:15
**failed** [4] - 7:25, 45:5, 75:5, 86:3
**fair** [2] - 30:8, 47:22
**fairly** [2] - 12:22, 64:12
**fantastic** [3] - 4:18, 37:23, 92:5
**far** [2] - 22:11, 61:1
**fare** [1] - 7:10
**favor** [1] - 64:12
**features** [1] - 71:20
**few** [1] - 32:22
**fiber** [36] - 25:12, 25:17, 25:20, 25:24, 28:22, 31:17, 33:12, 33:17, 33:20, 34:5, 34:15, 34:23, 37:2, 37:3, 38:10, 38:14, 38:18, 39:10, 40:7, 40:11, 40:12, 40:15, 41:18, 42:17, 43:25, 44:1, 44:3, 44:22, 44:24, 45:1, 49:19,

49:22, 50:4, 53:1, 70:3, 75:15
**fiber-reinforced** [4] - 44:22, 44:24, 49:19, 49:22
**field** [1] - 5:23
**figure** [1] - 73:6
**filament** [4] - 33:13, 33:17, 34:3, 34:5
**file** [1] - 20:16
**FILE** [1] - 93:19
**filed** [15] - 13:23, 14:4, 14:15, 17:23, 20:12, 20:18, 29:2, 57:11, 60:5, 63:11, 69:13, 71:6, 82:17, 82:22, 86:15
**FILED** [1] - 93:17
**filing** [3] - 9:20, 62:19, 69:12
**final** [17] - 13:11, 16:23, 17:2, 17:3, 18:12, 18:15, 18:17, 18:20, 19:2, 20:7, 23:2, 23:8, 54:1, 55:20, 63:12, 71:4
**fine** [7] - 5:5, 5:9, 5:15, 5:16, 23:24, 31:6, 31:10
**finger** [1] - 3:14
**FINGER** [1] - 1:16
**finish** [1] - 25:2
**finished** [1] - 65:23
**first** [25] - 3:10, 6:21, 7:8, 8:10, 15:18, 16:12, 27:19, 28:13, 34:1, 37:7, 38:3, 47:8, 48:23, 51:5, 52:7, 59:5, 64:23, 66:20, 68:5, 70:21, 78:18, 79:2, 79:6, 79:16, 82:16
**fits** [1] - 19:17
**flag** [3] - 24:19, 24:23, 25:4
**flat** [1] - 57:15
**flat-out** [1] - 57:15
**folks** [3] - 24:17, 91:8, 92:8
**follow** [8] - 29:18, 58:1, 65:15, 74:21, 74:22, 77:19, 77:24, 79:1
**follow-on** [3] - 77:19, 77:24, 79:1
**follow-up** [2] - 29:18, 58:1
**followed** [1] - 57:23
**following** [1] - 16:22
**footnote** [1] - 11:21

**FOR** [1] - 1:2
**foregoing** [2] - 93:8, 93:14
**forever** [1] - 40:20
**forgive** [1] - 46:6
**forgiveness** [1] - 49:6
**formulate** [1] - 63:17
**forth** [8] - 5:9, 20:1, 26:24, 32:1, 57:16, 87:21, 89:10, 89:21
**forward** [3] - 25:1, 27:1, 87:14
**founder** [1] - 55:9
**fraction** [1] - 39:11
**front** [4] - 9:24, 10:15, 31:23, 57:14
**full** [1] - 29:22
**fully** [1] - 43:9
**function** [5] - 33:16, 50:16, 50:20, 51:1, 77:2
**functionality** [1] - 75:15
**functioning** [1] - 78:1

## G

**Gall** [28] - 20:1, 20:11, 25:13, 27:1, 27:4, 28:14, 30:14, 31:5, 31:15, 31:18, 31:25, 32:11, 40:9, 40:24, 43:19, 45:10, 50:8, 51:5, 57:14, 58:15, 59:10, 61:5, 65:10, 65:11, 69:1, 69:14, 82:13, 85:23
**gall's** [1] - 13:15
**Gall's** [25] - 14:8, 20:5, 26:25, 27:13, 27:20, 28:1, 29:4, 29:16, 30:13, 33:25, 35:14, 35:19, 35:22, 36:1, 42:22, 43:18, 45:18, 55:25, 56:11, 57:8, 60:21, 62:11, 63:16, 68:15, 87:21
**general** [1] - 58:23
**generic** [1] - 37:14
**given** [7] - 16:18, 17:9, 21:25, 31:6, 61:18, 74:8, 74:13
**goal** [1] - 24:17
**GOODWIN** [1] - 2:5
**goodwin** [1] - 4:9
**govern** [1] - 67:1
**governs** [1] - 5:25
**granted** [1] - 26:10
**great** [1] - 37:23

**Greg** [8] - 55:9, 66:2, 69:5, 69:11, 73:16, 79:19, 81:13, 86:8
**GRIFFIN** [1] - 1:16
**Griffin** [1] - 3:13
**guide** [1] - 40:12

## H

**Hala** [1] - 3:16
**HALA** [1] - 1:19
**half** [1] - 60:2, 91:8
**happily** [1] - 27:10
**happy** [1] - 12:23
**harder** [1] - 54:14
**hardware** [1] - 40:13
**Hatcher** [1] - 1:12
**hatcher** [1] - 3:2
**HAYES** [1] - 1:18
**Hayes** [1] - 3:17
**heading** [1] - 13:8
**hear** [5] - 5:17, 12:23, 15:14, 68:7, 90:23
**heard** [7] - 11:8, 22:12, 49:17, 81:18, 84:4, 92:9, 93:10
**hearing** [14] - 9:1, 9:17, 10:8, 11:16, 12:21, 13:9, 15:8, 16:3, 16:21, 21:18, 21:25, 90:22, 91:6, 91:20
**heat** [2] - 44:23, 54:9
**heater** [8] - 33:1, 44:23, 49:20, 50:10, 50:11, 50:12, 54:6, 54:8
**heavily** [2] - 68:16, 68:20
**held** [1] - 92:24
**help** [1] - 44:16
**helped** [1] - 75:21
**helpful** [2] - 58:19, 83:19
**hereby** [1] - 93:5
**Herrington** [1] - 3:18
**HERRINGTON** [1] - 1:21
**hiding** [1] - 84:23
**HIGGINS** [30] - 1:22, 5:4, 6:1, 6:20, 11:6, 11:14, 12:5, 13:6, 13:20, 15:9, 22:25, 25:8, 30:11, 31:3, 32:18, 37:5, 42:1, 43:12, 44:13, 53:24, 54:21, 59:4, 61:10, 61:20, 81:3, 82:8, 88:10, 89:8, 91:10,

92:1

**Higgins** [40] - 3:18, 3:19, 5:5, 5:17, 5:21, 6:18, 16:1, 18:11, 19:9, 22:19, 22:24, 24:13, 25:6, 28:3, 28:11, 28:13, 29:3, 29:14, 30:9, 30:20, 32:4, 32:15, 38:11, 39:14, 41:24, 43:8, 44:12, 49:12, 49:17, 52:1, 53:21, 64:15, 66:21, 80:22, 81:1, 88:2, 90:18, 91:10, 92:2, 92:5

**history** [1] - 15:19
**hold** [2] - 83:6, 87:6
**honest** [1] - 27:9
**Honor** [61] - 3:7, 3:13, 4:5, 4:17, 5:4, 6:2, 6:15, 6:20, 11:6, 14:25, 15:9, 15:17, 16:22, 18:14, 19:9, 21:10, 22:4, 22:21, 23:1, 28:7, 30:11, 31:14, 32:19, 36:18, 37:5, 37:25, 42:1, 43:12, 43:13, 44:13, 49:10, 49:16, 50:21, 51:12, 52:6, 52:12, 53:25, 54:18, 57:23, 59:5, 61:10, 61:21, 64:19, 65:5, 66:20, 68:1, 68:25, 71:23, 73:10, 74:5, 76:10, 76:19, 77:13, 79:16, 81:18, 82:3, 87:25, 91:14, 92:1, 92:12, 92:21

**Honor's** [1] - 3:19
**Honor,it** [1] - 78:15
**Honorable** [1] - 1:12
**hope** [1] - 48:14
**hour** [2] - 91:7
**hours** [1] - 71:16
**house** [6] - 83:14, 84:1, 84:13, 85:7, 87:15

# I

**idea** [7] - 22:1, 69:15, 70:1, 70:6, 79:3, 84:7, 89:20
**identification** [1] - 57:20
**identified** [27] - 9:16, 15:22, 16:4, 16:7, 16:15, 16:17, 17:7, 17:11, 17:14, 26:17,

26:18, 38:8, 39:5, 39:16, 39:24, 44:5, 44:7, 50:14, 50:19, 52:15, 56:16, 59:15, 69:1, 72:6, 80:16, 80:19, 86:10
**identifies** [1] - 76:24
**identify** [11] - 38:21, 43:20, 49:17, 50:25, 51:15, 67:15, 72:11, 75:11, 76:13, 76:14, 86:4
**identifying** [1] - 40:3
**identity** [1] - 67:9
**II** [1] - 2:3
**immediately** [1] - 53:11
**important** [5] - 68:22, 77:8, 77:14, 91:22, 92:8
**imprinting** [1] - 28:23
**improperly** [1] - 13:2
**IN** [2] - 1:1, 1:2
**in-house** [6] - 83:14, 84:1, 84:13, 85:7, 87:15
**inaccuracy** [1] - 82:9
**inadvertent** [5] - 47:11, 51:10, 53:11, 53:15, 86:21
**inadvertently** [1] - 47:2
**Inc** [1] - 3:3
**INC** [4] - 1:3, 1:6, 93:10
**include** [6] - 18:6, 47:3, 47:14, 47:21, 48:22, 49:8
**included** [4] - 11:4, 39:7, 47:4, 47:18
**includes** [3] - 20:15, 28:12, 77:4
**including** [2] - 40:5, 74:16
**incorporate** [1] - 17:4
**independent** [1] - 67:15
**indicates** [1] - 31:19
**indirect** [10] - 35:23, 36:16, 37:11, 38:5, 38:22, 38:24, 41:11, 41:14, 42:2, 43:3
**indirectly** [2] - 37:8, 40:6
**individual** [1] - 61:2
**individuals** [1] - 76:13
**inform** [1] - 17:15
**information** [12] - 8:5, 39:2, 40:15, 48:19, 55:3, 60:17, 63:25,

74:25, 85:4, 86:22, 87:5, 87:18
**infringe** [7] - 37:1, 37:8, 37:9, 37:10, 40:25, 41:16, 42:25
**infringed** [1] - 34:14
**infringement** [38] - 13:24, 14:2, 14:14, 16:23, 17:18, 18:7, 22:6, 27:16, 32:10, 35:8, 35:23, 35:25, 36:16, 37:11, 37:14, 37:17, 38:6, 38:7, 38:22, 38:23, 38:24, 38:25, 40:4, 40:22, 41:14, 41:15, 42:3, 42:5, 42:19, 43:1, 43:3, 45:14, 50:14, 51:13, 51:17, 52:20, 61:25, 62:7
**infringes** [2] - 35:3, 40:6
**infringing** [1] - 37:4
**initial** [6] - 46:1, 46:19, 57:12, 64:3, 69:5, 86:5
**installs** [1] - 34:3
**instance** [1] - 42:20
**instead** [2] - 20:18, 73:7
**insulating** [2] - 51:2, 51:3
**intellectual** [3] - 47:25, 52:1, 52:18
**intend** [3] - 4:25, 11:9, 11:11
**intended** [1] - 11:3
**interaction** [1] - 84:10
**interpret** [1] - 31:4
**interpreting** [2] - 30:15, 31:9
**interrogatories** [1] - 76:21
**interrogatory** [5] - 76:3, 76:11, 76:12, 86:7, 86:11
**Interrogatory** [1] - 76:24
**interrupt** [2] - 65:14, 80:5
**interrupting** [2] - 18:11, 40:19
**intervening** [1] - 70:25
**invalidity** [17] - 7:5, 8:2, 23:9, 49:3, 54:23, 54:24, 55:6, 55:20, 57:13, 59:2, 62:1, 65:6, 74:25, 75:11, 83:4, 83:11, 85:14

**invented** [4] - 55:1, 68:4, 78:17, 78:19
**invention** [10] - 67:10, 67:16, 69:6, 69:8, 70:7, 71:1, 72:20, 77:21
**inventions** [2] - 66:2, 69:12
**inventor** [3] - 75:12, 75:18, 75:20
**investigation** [2] - 52:22, 90:8
**involve** [1] - 42:8
**involved** [8] - 67:10, 73:15, 75:7, 75:23, 76:14, 76:15, 77:6, 84:7
**involvement** [2] - 75:5, 85:21
**involves** [1] - 25:9
**issue** [49] - 5:2, 5:3, 5:14, 6:21, 7:5, 8:10, 8:16, 13:11, 14:3, 14:5, 16:11, 17:18, 19:13, 19:14, 21:15, 22:20, 24:19, 25:8, 25:10, 27:9, 27:14, 27:15, 28:16, 28:17, 28:25, 29:11, 29:12, 34:19, 37:6, 37:11, 38:22, 39:9, 39:13, 41:14, 44:17, 45:3, 52:8, 53:5, 53:23, 54:21, 59:9, 63:5, 69:7, 78:24, 79:7, 85:10, 85:18, 87:11
**issue-by-issue** [1] - 5:14
**issued** [3] - 8:16, 16:12, 32:12
**issues** [8] - 6:4, 6:25, 7:13, 18:25, 38:4, 47:13, 91:9, 91:22

# J

**JACQUELINE** [1] - 2:6
**Jacqueline** [1] - 4:9
**January** [10] - 66:4, 67:19, 70:8, 73:19, 73:25, 78:2, 80:21, 82:21, 83:18, 84:20
**Jay** [2] - 83:14, 84:13
**joined** [2] - 69:10, 75:19
**joint** [9] - 8:22, 9:4, 9:12, 9:21, 10:10, 12:7, 15:21, 24:8,

26:19
**JR** [1] - 1:19
**Judge** [15] - 7:3, 8:15, 8:21, 9:14, 9:22, 10:4, 10:8, 10:18, 11:17, 11:22, 12:14, 12:23, 15:4, 16:11
**judgment** [31] - 9:8, 11:19, 11:24, 13:24, 14:15, 14:18, 15:2, 15:5, 19:12, 19:20, 20:12, 20:16, 20:19, 27:18, 27:21, 29:1, 29:12, 31:7, 32:11, 35:15, 36:3, 39:13, 42:23, 43:3, 60:5, 63:20, 70:9, 84:24, 86:16, 87:22, 89:17
**July** [32] - 56:5, 56:6, 57:4, 60:6, 62:20, 64:24, 65:9, 68:17, 68:20, 69:14, 69:20, 70:10, 70:16, 71:10, 71:17, 72:25, 75:16, 77:11, 78:7, 79:2, 79:11, 79:12, 80:16, 81:19, 82:15, 82:17, 82:20, 84:25, 88:22, 89:25
**jump** [1] - 6:21
**June** [5] - 57:4, 69:14, 75:16, 78:7, 79:12

# K

**Karl** [1] - 86:9
**keep** [4] - 8:12, 24:25, 81:4, 84:14
**Keith** [1] - 86:8
**key** [5] - 68:18, 86:15, 88:12, 88:20, 88:22
**kind** [4] - 12:12, 26:10, 51:6, 69:15
**knowledge** [7] - 81:25, 83:22, 84:3, 84:9, 84:22, 86:5, 89:19
**knowledgeable** [1] - 77:1
**known** [2] - 46:16, 81:10

# L

**lab** [7] - 61:3, 83:15, 83:20, 85:4, 85:20, 88:21, 91:2
**lack** [6] - 7:15, 7:24, 27:25, 43:4, 48:18,

64:10
**language** [12] - 26:25, 27:2, 27:6, 31:21, 32:2, 36:15, 38:1, 38:8, 39:6, 39:23, 51:23, 54:3
**large** [1] - 31:16
**larger** [1] - 69:12
**last** [9] - 18:23, 22:19, 23:3, 24:7, 29:22, 44:25, 55:21, 86:12
**late** [3] - 24:9, 79:10, 85:19
**launch** [2] - 66:3, 67:18
**Laura** [2] - 1:12, 3:2
**law** [1] - 35:8
**lawsuit** [1] - 17:22
**lawyer** [1] - 3:10
**lawyers** [3] - 3:25, 4:3, 91:19
**LAYTON** [1] - 1:16
**layton** [1] - 3:14
**leading** [1] - 75:16
**least** [4] - 54:12, 58:24, 62:12, 83:4
**leave** [7] - 6:7, 10:3, 10:4, 12:14, 47:10, 48:17, 51:10
**leaving** [1] - 76:17
**led** [3] - 22:2, 69:19, 69:22
**LEE** [1] - 1:18
**Lee** [1] - 3:17
**left** [6] - 11:15, 35:9, 36:25, 73:18, 83:23, 87:3
**legal** [4] - 24:1, 34:7, 38:4, 59:21, 81:21
**lengthy** [1] - 85:2
**letter** [20] - 12:20, 17:15, 26:3, 26:8, 27:22, 28:6, 29:21, 30:21, 34:12, 35:17, 36:13, 44:18, 45:4, 53:9, 55:11, 57:12, 57:25, 65:5, 74:19, 86:1
**letting** [1] - 15:6
**Lexus** [1] - 48:1
**light** [1] - 18:25
**limitation** [23] - 20:15, 25:16, 29:6, 29:16, 31:16, 32:12, 38:20, 39:1, 43:15, 44:25, 47:1, 49:20, 49:21, 49:23, 50:10, 50:12, 51:8, 51:15, 51:14, 52:14, 53:2, 53:14
**limitations** [9] - 41:22,

51:18, 51:19, 52:8, 52:10, 52:14, 53:17, 53:18, 70:17
**limited** [2] - 23:4, 28:9
**line** [5] - 3:5, 3:16, 3:24, 4:2, 24:18
**lingering** [1] - 16:16
**liquid** [4] - 17:17, 17:20, 18:4, 18:8
**list** [8] - 8:24, 9:2, 9:15, 10:15, 66:5, 66:8, 66:15, 86:9
**listed** [3] - 16:7, 16:8, 75:17
**lists** [1] - 86:8
**litany** [1] - 90:13
**literally** [2] - 33:17, 42:11
**litigation** [5] - 73:14, 83:6, 87:6, 88:15
**LLC** [1] - 93:22
**LLP** [3] - 1:21, 2:2, 2:5
**lo** [1] - 85:1
**load** [2] - 40:12, 44:1
**local** [2] - 67:1, 67:3
**look** [13] - 7:13, 7:16, 10:23, 30:20, 37:6, 45:3, 48:8, 48:25, 59:11, 59:12, 70:10, 70:13, 87:1
**looked** [1] - 46:14
**looking** [9] - 36:22, 42:6, 45:7, 45:9, 59:23, 62:1, 62:24, 65:23, 90:19
**looks** [2] - 8:3, 91:4
**loop** [1] - 82:6
**lose** [1] - 40:20

## M

**machine** [1] - 90:1
**mail** [1] - 23:7
**maintain** [1] - 52:20
**majority** [1] - 41:22
**manner** [3] - 37:20, 64:4, 86:3
**march** [1] - 24:15
**March** [30] - 55:7, 55:13, 58:24, 59:8, 60:14, 61:21, 62:2, 63:12, 66:3, 66:24, 67:13, 67:14, 67:18, 67:22, 68:12, 68:18, 69:7, 70:5, 70:24, 71:8, 71:25, 72:11, 72:24, 73:6, 75:14, 77:10, 78:21, 78:25, 79:13, 81:15

**Mark** [18] - 62:5, 66:3, 66:22, 67:18, 73:16, 75:6, 75:8, 75:21, 75:22, 76:9, 76:25, 77:7, 80:3, 81:11, 81:13, 86:7, 86:8, 90:2
**mark** [8] - 55:9, 69:11, 69:18, 70:4, 75:9, 75:17, 78:23, 79:19
**Mark's** [1] - 66:2
**mark's** [1] - 69:5
**marked** [1] - 55:17
**marketing** [1] - 81:10
**Markforged** [77] - 3:4, 4:8, 7:25, 8:17, 9:9, 10:13, 10:16, 11:20, 12:7, 14:2, 15:22, 16:5, 16:15, 17:7, 17:8, 17:11, 17:24, 18:8, 19:16, 19:25, 23:6, 33:19, 34:25, 35:2, 35:5, 35:13, 36:6, 40:5, 40:8, 42:7, 42:15, 42:18, 42:23, 43:5, 44:8, 45:11, 45:20, 47:1, 47:9, 48:12, 49:24, 50:3, 50:18, 51:20, 52:25, 54:25, 55:5, 55:9, 55:10, 56:10, 56:19, 56:20, 57:7, 57:17, 58:8, 68:4, 70:20, 72:7, 73:13, 75:12, 79:5, 82:18, 82:19, 82:24, 82:25, 83:2, 83:9, 84:15, 84:21, 85:7, 85:19, 85:22, 86:25, 87:8, 87:17, 88:16, 88:18
**MARKFORGED** [2] - 1:6, 93:10
**Markforged's** [31] - 12:9, 18:2, 20:10, 20:17, 20:20, 21:22, 22:1, 24:2, 25:13, 28:21, 29:9, 32:7, 33:9, 34:12, 36:24, 37:8, 38:9, 43:22, 45:4, 55:3, 57:12, 58:3, 60:18, 65:4, 67:15, 76:20, 76:23, 83:14, 84:1, 85:11, 85:25
**Markman** [5] - 12:21, 16:3, 16:21, 21:18, 21:25
**material** [31] - 17:10, 17:17, 17:19, 17:20, 21:17, 21:22, 22:1,

22:7, 24:2, 25:22, 28:20, 28:23, 29:10, 32:8, 32:9, 41:18, 44:22, 44:24, 49:19, 49:22, 49:24, 50:2, 50:4, 50:6, 51:2, 51:3, 51:22, 51:24, 76:1
**materials** [12] - 17:16, 19:16, 25:21, 26:1, 29:8, 31:10, 66:18, 70:11, 83:16, 83:18, 87:14
**matter** [9] - 26:10, 50:1, 56:3, 58:14, 66:23, 67:16, 69:6, 71:2, 72:12
**mean** [3] - 4:25, 27:9, 54:9
**meaning** [2] - 20:21, 39:14
**means** [8] - 19:16, 27:4, 27:12, 32:4, 33:3, 33:4, 40:8, 52:4
**meet** [2] - 41:21, 48:17
**meeting** [1] - 83:13
**meets** [2] - 39:6, 59:20
**mention** [4] - 37:15, 45:15, 46:23, 55:25
**mentioned** [13] - 7:23, 13:7, 15:20, 16:2, 35:20, 51:9, 51:15, 56:7, 60:10, 62:21, 63:14, 80:22, 83:8
**mentions** [2] - 81:8, 82:14
**met** [4] - 45:11, 45:13, 55:15, 84:13
**metadata** [1] - 90:7
**method** [5] - 34:21, 34:23, 37:21, 48:7, 91:18
**mid** [1] - 40:19
**might** [3] - 12:24, 13:4, 79:9
**mind** [5] - 7:23, 8:9, 25:1, 54:16, 61:13
**mine** [1] - 40:20
**minute** [1] - 91:24
**mistake** [6] - 46:2, 47:12, 51:10, 53:6, 53:7, 53:12, 53:16, 54:13
**modified** [1] - 89:25
**moment** [1] - 91:17
**Monday** [6] - 25:3, 91:4, 91:15, 91:21, 92:4, 92:19
**monolith** [1] - 28:23

**months** [1] - 17:22
**morning** [2] - 91:15, 92:4
**MORRIS** [1] - 2:2
**Morris** [1] - 4:7
**most** [1] - 7:5
**motion** [28] - 4:22, 5:1, 6:19, 11:4, 11:12, 13:23, 17:25, 19:12, 19:21, 21:7, 21:15, 21:20, 22:18, 26:9, 27:18, 28:17, 29:1, 30:7, 31:7, 35:15, 36:2, 39:13, 48:17, 63:20, 84:25, 87:22, 88:19, 89:17
**MOTION** [3] - 1:9, 1:11, 93:16
**motions** [7] - 4:20, 5:25, 15:24, 16:6, 19:7, 23:19, 63:3
**mountain** [1] - 75:25
**Mourad** [1] - 3:16
**MOURAD** [1] - 1:19
**move** [13] - 6:11, 6:14, 7:25, 20:22, 25:4, 25:6, 32:16, 43:2, 43:10, 44:16, 53:22, 54:18, 54:22
**moved** [2] - 28:16, 32:5
**moving** [6] - 32:19, 43:6, 44:19, 60:15, 63:6, 90:4
**MR** [75] - 3:12, 4:5, 4:13, 4:16, 5:4, 5:13, 6:1, 6:15, 6:20, 11:6, 11:14, 12:5, 13:6, 13:20, 15:9, 15:16, 18:14, 20:24, 21:3, 21:9, 22:21, 22:25, 25:8, 28:7, 30:5, 30:11, 31:3, 31:14, 32:18, 37:5, 37:25, 41:4, 41:8, 41:13, 42:1, 43:12, 43:13, 43:17, 44:13, 49:16, 53:24, 54:21, 59:4, 61:10, 61:20, 64:18, 64:23, 65:18, 66:7, 66:11, 66:20, 68:25, 71:11, 71:19, 71:23, 73:10, 73:22, 74:5, 74:13, 75:2, 76:8, 77:13, 78:4, 78:15, 79:16, 80:10, 80:15, 81:3, 82:8, 88:10, 89:8, 91:10, 91:14, 92:1, 92:12
**multiple** [1] - 65:18

**mush** [1] - 65:22
**must** [4] - 38:24, 44:1, 44:2, 68:21
**mute** [1] - 4:6

**N**

**named** [1] - 61:2
**narrow** [1] - 16:13
**narrower** [1] - 39:20
**necessarily** [1] - 21:10
**need** [10] - 24:22, 24:23, 37:19, 44:6, 59:2, 59:18, 68:2, 78:14, 91:9, 91:22
**needed** [4] - 10:3, 12:14, 13:4, 90:9
**never** [9] - 22:8, 26:16, 50:2, 56:7, 62:21, 63:8, 75:7, 75:22, 77:6
**nevertheless** [1] - 27:12
**NEW** [1] - 93:3
**new** [38] - 7:10, 8:17, 9:18, 23:11, 23:12, 23:15, 23:18, 24:1, 26:5, 27:2, 27:5, 27:6, 27:7, 27:13, 28:2, 29:24, 30:3, 30:17, 30:25, 31:1, 35:13, 36:10, 40:22, 41:2, 45:10, 45:19, 52:20, 52:23, 55:25, 56:1, 56:2, 60:21, 60:22, 62:12, 63:17, 86:18, 86:19
**newly** [1] - 40:24
**next** [11] - 8:19, 25:6, 25:8, 32:16, 32:18, 35:19, 43:10, 44:15, 54:19, 54:21, 82:1
**Nichols** [1] - 4:7
**NICHOLS** [1] - 2:2
**nine** [3] - 11:5, 11:13, 16:8
**non** [1] - 37:4
**non-infringing** [1] - 37:4
**nondisclosure** [1] - 7:7
**none** [1] - 17:16
**noninfringement** [19] - 7:9, 8:2, 12:10, 13:12, 13:14, 18:8, 19:25, 20:10, 23:10, 23:12, 27:7, 29:11, 33:9, 33:24, 36:24, 38:2, 40:1, 49:2,

53:4
**nonprovisional** [4] - 56:16, 56:22, 57:1, 62:19
**Noreika** [14] - 7:4, 8:16, 8:22, 9:14, 9:22, 10:4, 10:8, 11:18, 11:22, 12:14, 12:23, 15:4, 16:12
**Noreika's** [1] - 10:18
**Northern** [1] - 67:5
**note** [5] - 6:23, 26:7, 51:12, 53:25, 82:17
**notebook** [15] - 61:3, 61:9, 82:6, 83:15, 83:20, 85:4, 85:20, 88:4, 88:7, 88:8, 88:21, 88:25, 89:3, 89:6, 91:2
**noted** [1] - 42:17
**notes** [1] - 93:13
**nothing** [14] - 22:22, 26:13, 31:1, 33:8, 33:23, 35:20, 35:24, 36:13, 36:17, 43:4, 45:16, 62:23, 84:4, 84:6
**notice** [13] - 21:11, 47:6, 47:19, 55:24, 58:23, 67:14, 70:23, 72:19, 80:7, 80:8, 80:19, 81:22, 83:1
**November** [3] - 18:16, 18:21, 88:25
**nowhere** [3] - 26:5, 27:21, 34:16
**nozzle** [21] - 25:12, 25:17, 25:18, 25:20, 25:25, 26:15, 29:7, 31:17, 31:21, 32:9, 32:25, 33:14, 33:20, 38:11, 38:12, 38:16, 45:9, 45:16, 51:22, 51:24, 53:2
**number** [5] - 8:12, 8:21, 65:8, 76:12
**Number** [3] - 3:4, 76:24, 93:9
**nuzzle** [1] - 44:21
**nylon** [1] - 37:1

**O**

**objected** [3] - 9:19, 12:8, 12:9
**objection** [2] - 11:21, 21:7
**objects** [2] - 37:1, 41:17

**obligation** [1] - 24:25
**occurred** [4] - 17:1, 18:20, 23:22, 69:7
**occurs** [1] - 41:19
**October** [4] - 17:14, 39:25, 65:3, 65:5
**OF** [4] - 1:2, 1:9, 93:2, 93:3
**offense** [1] - 61:1
**offered** [1] - 19:18
**OFFICIALLY** [1] - 93:17
**old** [1] - 33:3
**older** [1] - 35:1
**omissions** [1] - 54:15
**once** [2] - 5:1, 46:1
**one** [50] - 5:8, 5:20, 6:23, 11:19, 12:22, 13:4, 13:20, 14:4, 20:3, 21:15, 23:1, 24:19, 29:10, 29:21, 30:9, 30:12, 32:9, 41:2, 42:2, 43:11, 46:13, 46:23, 47:18, 47:21, 52:3, 53:18, 54:12, 55:17, 61:16, 61:21, 62:12, 62:18, 65:20, 67:23, 68:4, 68:14, 68:19, 69:2, 69:14, 69:19, 71:11, 71:12, 80:16, 83:6, 83:19, 92:6
**ongoing** [1] - 89:1
**opening** [1] - 20:5
**operate** [1] - 39:9
**operation** [2] - 39:4, 77:2
**operational** [1] - 38:17
**operations** [1] - 90:6
**opined** [1] - 32:12
**opinion** [4] - 25:14, 25:15, 27:2, 27:13
**opinions** [1] - 43:18
**opportunity** [7] - 14:16, 19:3, 19:22, 20:9, 72:9, 79:14, 92:8
**opposite** [2] - 27:4, 47:20
**opposition** [4] - 9:10, 14:3, 19:12, 42:23
**order** [17] - 7:3, 8:10, 8:13, 8:16, 8:20, 8:21, 9:5, 9:25, 10:1, 10:5, 10:18, 10:25, 12:3, 15:25, 16:12, 32:20, 85:13
**ordered** [2] - 8:24, 9:15
**orders** [2] - 7:3, 7:12

**ordinary** [1] - 20:21
**organizational** [1] - 73:14
**ORRICK** [1] - 1:21
**Orrick** [1] - 3:18
**Oswald** [4] - 20:3, 43:17, 50:13, 51:7
**Oswald's** [3] - 19:14, 50:8, 51:5
**own** [5] - 24:2, 40:3, 58:14, 60:18, 64:6

**P**

**P.A** [1] - 1:16
**p.m** [1] - 91:16
**page** [7] - 11:4, 11:13, 14:4, 29:21, 52:15, 55:12, 74:18
**pages** [5] - 16:2, 65:6, 65:15, 76:21, 80:1, 81:7, 93:15
**paper** [1] - 14:3
**papers** [1] - 15:3
**paragraph** [11] - 26:2, 29:14, 29:22, 37:7, 38:19, 38:21, 39:7, 41:8, 42:10, 42:12, 44:9
**paragraphs** [3] - 29:15, 45:19, 63:9
**part** [12] - 11:23, 12:1, 13:7, 19:6, 21:1, 28:16, 38:21, 41:2, 60:24, 69:2, 82:13, 89:11
**particular** [3] - 19:17, 32:13, 53:14
**particularly** [1] - 76:22
**parties** [21] - 4:23, 8:24, 9:7, 9:15, 10:9, 11:3, 11:8, 11:11, 16:13, 16:22, 16:24, 17:2, 18:18, 19:3, 23:17, 24:21, 33:4, 43:24, 50:21, 52:13, 90:23
**parties'** [2] - 8:22, 16:9
**parts** [1] - 59:5
**party** [10] - 19:20, 42:3, 42:9, 42:14, 42:20, 47:22, 48:15, 64:7, 67:2, 67:8
**party's** [1] - 68:1
**passage** [1] - 29:3
**passed** [1] - 31:20
**passes** [1] - 32:8
**past** [1] - 63:2

**pasted** [4] - 35:18, 42:12, 53:16, 54:2
**patent** [20] - 4:14, 25:19, 29:5, 32:23, 34:17, 34:18, 35:8, 40:5, 40:6, 44:20, 47:19, 48:5, 51:12, 56:12, 59:23, 67:1, 71:2, 72:5, 72:13, 73:6
**patents** [11] - 22:3, 40:4, 47:5, 51:16, 52:11, 56:16, 56:22, 57:1, 79:17, 84:9, 89:19
**pattern** [6] - 7:1, 7:18, 33:8, 48:25, 49:3, 63:21
**pendency** [1] - 73:13
**penny** [1] - 72:24
**Pennypack** [8] - 5:24, 6:9, 6:16, 8:8, 13:22, 43:14, 48:15
**people** [2] - 73:15, 84:10
**percent** [3] - 37:2, 38:15, 41:19
**perfection** [2] - 66:2, 77:21
**perform** [1] - 50:25
**performed** [1] - 90:11
**performs** [5] - 33:19, 34:23, 35:5, 50:15, 50:20
**perhaps** [2] - 26:11, 27:6
**period** [3] - 77:3, 77:5, 80:23
**permission** [1] - 3:19
**permit** [1] - 21:5
**permitted** [2] - 23:10, 24:11
**persisted** [3] - 69:8, 69:16, 69:17
**persistence** [1] - 70:1
**person** [6] - 4:12, 25:15, 25:22, 67:10, 79:19, 86:4
**persuaded** [1] - 22:12
**physical** [1] - 71:11
**pick** [3] - 25:2, 91:1, 92:16
**picked** [3] - 60:16, 60:19, 61:21
**picture** [1] - 73:8
**pictures** [7] - 65:1, 65:9, 65:11, 65:17, 65:19, 69:21, 74:17
**pieces** [1] - 90:4
**place** [3] - 26:24, 83:7,

87:7
**plain** [8] - 20:20,
31:21, 31:22, 32:2,
39:14, 39:22, 54:11,
72:12
**plainly** [1] - 66:18
**plaintiff** [17] - 3:9,
3:15, 3:20, 5:5, 6:1,
7:22, 40:22, 52:19,
64:21, 71:22, 73:2,
74:3, 74:23, 76:3,
79:10, 91:11, 92:2
**Plaintiff** [2] - 1:4, 1:23
**plaintiff's** [6] - 4:22,
8:15, 20:23, 22:18,
29:21, 38:8
**plan** [1] - 10:16
**PLLC** [1] - 1:18
**plus** [1] - 78:8
**point** [27] - 6:14,
13:19, 13:21, 14:14,
14:17, 15:11, 23:1,
34:13, 35:1, 45:25,
47:3, 48:4, 48:23,
63:2, 66:14, 68:7,
68:8, 73:5, 74:20,
75:1, 75:2, 81:2,
81:5, 82:8, 82:23,
85:9
**pointed** [7] - 13:3,
34:13, 36:14, 38:1,
38:7, 50:4, 70:21
**pointing** [4] - 36:16,
46:13, 54:8, 72:24
**points** [3] - 5:15, 79:9,
81:23
**polymer** [32] - 6:22,
8:15, 8:18, 9:12,
10:13, 11:20, 13:3,
14:6, 15:19, 15:22,
16:4, 16:17, 17:7,
17:19, 18:3, 19:15,
20:2, 20:14, 20:18,
21:1, 21:5, 21:13,
22:18, 25:10, 25:13,
25:20, 26:21, 28:8,
28:9, 28:12, 28:22,
31:18
**polymer'** [2] - 25:18,
25:25
**portion** [3] - 20:23,
20:25, 44:18
**portions** [1] - 4:21
**portray** [1] - 87:13
**position** [16] - 18:9,
19:5, 19:25, 26:23,
28:2, 28:15, 30:18,
32:1, 32:7, 43:9,
43:22, 48:9, 55:18,
58:5, 67:9

**positions** [3] - 17:1,
20:10, 24:22
**possess** [1] - 8:6
**possessed** [1] - 83:11
**possession** [3] - 55:4,
60:17, 64:1
**possible** [3] - 24:16,
25:3, 68:9
**possibly** [1] - 11:18
**potentially** [1] - 70:19
**practice** [24] - 11:4,
11:12, 55:15, 56:13,
56:15, 59:1, 59:8,
59:14, 59:21, 59:25,
60:7, 60:11, 62:5,
62:22, 66:24, 67:23,
73:4, 81:13, 81:14,
81:17, 81:21, 85:1,
86:19, 89:13
**pre** [1] - 28:23
**pre-imprinting** [1] -
28:23
**preclude** [2] - 28:1,
43:7
**precluded** [2] - 87:23,
89:5
**precluding** [1] - 86:24
**prefer** [3] - 5:2, 5:10,
61:14
**preference** [2] - 5:12,
5:18
**prejudice** [19] - 6:8,
7:15, 7:21, 8:8,
13:21, 14:20, 19:10,
20:2, 20:7, 43:15,
45:24, 48:14, 54:17,
61:19, 61:20, 63:15,
64:9, 64:11, 90:15
**prejudiced** [2] - 52:19,
61:17
**preliminary** [1] - 5:20
**prelude** [1] - 82:12
**prepare** [1] - 73:24
**prepared** [2] - 62:9,
89:14
**prerequisite** [1] - 38:5
**present** [2] - 91:20,
93:7
**presentation** [4] -
3:20, 65:22, 65:24,
69:22
**presented** [5] - 16:20,
22:8, 28:10, 55:6,
84:2
**presenting** [2] - 28:14,
58:4
**pretty** [3] - 68:16,
68:20, 68:21
**previous** [1] - 85:9
**previously** [1] - 41:6

**primary** [1] - 17:10
**print** [13] - 33:12,
33:16, 34:4, 34:15,
38:13, 38:14, 39:10,
40:7, 40:11, 40:15,
41:17, 42:17, 43:25
**printed** [1] - 44:3
**printer** [11] - 34:3,
38:17, 40:7, 40:11,
40:14, 41:17, 44:1,
44:3, 69:12, 70:2,
81:10
**printers** [8] - 21:22,
28:21, 33:20, 38:9,
39:9, 41:16, 41:20
**printing** [4] - 33:20,
38:14, 38:17, 75:15
**prints** [2] - 34:23, 70:3
**priority** [1] - 72:5
**problem** [1] - 9:9
**problems** [2] - 34:7,
47:7
**proceed** [3] - 4:24,
24:15, 24:20
**proceeded** [1] - 47:15
**proceedings** [1] - 93:8
**process** [2] - 17:12,
76:5
**PROCTER** [1] - 2:5
**Procter** [1] - 4:9
**produce** [4] - 85:13,
87:9, 87:16, 88:16
**produced** [7] - 61:5,
64:17, 74:16, 86:2,
88:6, 88:11, 88:17
**produces** [1] - 54:9
**producing** [1] - 84:20
**product** [16] - 29:9,
35:5, 37:9, 37:18,
37:20, 39:3, 41:1,
42:16, 50:15, 50:19,
64:3, 65:23, 66:4,
67:19, 70:7, 76:9
**production** [1] - 76:16
**products** [16] - 17:17,
33:10, 33:15, 34:4,
35:12, 36:7, 36:9,
42:24, 43:6, 46:17,
53:1, 60:18, 76:6,
76:8, 76:16, 77:3
**progressed** [1] - 46:9
**progressing** [1] - 46:9
**promptly** [1] - 91:23
**prong** [1] - 12:15
**proof** [1] - 85:11
**proper** [4] - 10:19,
47:8, 48:11, 52:22
**properly** [1] - 13:1
**proposed** [5] - 4:24,
7:9, 9:11, 18:2,

20:17
**propounded** [1] - 76:3
**prototype** [48] - 56:6,
56:7, 58:9, 58:11,
60:4, 60:6, 62:21,
63:6, 63:14, 64:24,
64:25, 65:10, 65:11,
68:18, 69:20, 69:23,
70:16, 71:9, 71:17,
71:24, 73:12, 73:16,
73:21, 74:9, 74:17,
75:21, 77:12, 78:1,
78:5, 79:2, 79:11,
79:22, 80:17, 80:18,
80:20, 80:22, 81:8,
82:16, 85:21, 88:14,
88:23, 89:11, 89:12,
89:25, 90:2
**prototypes** [21] - 56:1,
56:6, 56:14, 56:24,
57:21, 59:16, 60:22,
61:8, 62:17, 62:18,
64:22, 64:24, 65:16,
66:15, 67:20, 74:11,
77:20, 78:8, 80:9,
80:11, 80:17
**prove** [1] - 34:22
**provide** [1] - 67:9
**provided** [10] - 21:11,
26:12, 31:15, 51:7,
51:20, 53:3, 55:11,
57:9, 67:12, 72:18
**providing** [1] - 61:23
**provisional** [32] -
53:22, 55:8, 55:13,
56:1, 56:12, 57:2,
58:25, 59:8, 59:10,
59:13, 61:22, 62:2,
62:25, 63:13, 64:16,
66:6, 66:8, 66:16,
67:23, 68:10, 68:17,
69:13, 71:9, 75:13,
75:17, 77:11, 77:19,
78:7, 78:9, 78:22,
79:18, 90:3
**provisionals** [16] -
56:5, 56:17, 56:25,
57:5, 57:18, 57:21,
58:6, 58:8, 58:12,
61:8, 62:13, 62:14,
62:16, 66:12, 75:18,
79:12
**public** [3] - 69:4,
77:18, 77:22
**publicly** [1] - 69:23
**published** [1] - 56:18
**pull** [2] - 12:20, 53:1
**pulled** [1] - 51:22
**pulling** [13] - 44:25,
46:25, 48:2, 49:21,

51:8, 51:11, 51:14,
51:24, 52:10, 52:14,
52:25, 53:13, 54:1
**purports** [1] - 90:5
**purposeful** [3] - 7:7,
54:15, 90:16
**purposefully** [1] -
83:25
**purposely** [1] - 87:18
**purposes** [1] - 92:17
**pursuant** [1] - 15:24
**put** [14] - 14:17, 20:1,
31:25, 45:5, 49:4,
55:24, 57:12, 60:20,
67:2, 68:23, 70:22,
73:11, 73:21, 87:21
**putting** [4] - 57:16,
66:18, 89:10, 89:21

## Q

**questionable** [1] -
90:6
**questioned** [1] - 36:5
**questioning** [1] -
84:17
**questions** [8] - 14:12,
14:25, 49:11, 79:25,
80:1, 88:1, 89:15,
91:1
**quickly** [2] - 23:1,
53:24
**quite** [2] - 30:11, 81:3

## R

**raise** [2] - 8:17, 10:1
**raised** [8] - 14:2, 15:4,
19:10, 34:9, 36:3,
39:14, 54:25, 57:6
**raises** [1] - 19:13
**rather** [1] - 32:1
**read** [8] - 12:20, 29:3,
29:15, 30:13, 38:19,
45:12, 63:9, 68:15
**reading** [2] - 23:6,
32:2
**realize** [1] - 53:7
**really** [8] - 7:21, 15:3,
15:5, 26:22, 40:17,
53:13, 61:14, 78:8
**reason** [8] - 10:7,
17:24, 21:10, 30:1,
73:11, 77:14, 86:1,
86:3
**reasons** [1] - 52:24
**rebuttal** [3] - 26:12,
40:24, 61:25
**received** [4] - 8:22,

20:5, 53:9, 70:18
**receiving** [1] - 21:23
**recited** [7] - 39:10,
50:16, 50:20, 51:1,
53:2, 70:1, 80:11
**recites** [1] - 25:11
**recognize** [2] - 52:13,
53:7
**recognized** [3] - 40:2,
52:2, 67:25
**record** [3] - 29:20,
92:23, 92:25
**reduce** [2] - 8:24, 9:15
**reduced** [3] - 62:4,
66:24, 81:14
**reduction** [19] - 55:14,
56:13, 56:15, 59:1,
59:7, 59:14, 59:21,
59:25, 60:7, 60:11,
62:22, 67:23, 73:4,
81:13, 81:17, 81:20,
85:1, 86:18, 89:13
**refer** [2] - 88:4, 88:7
**reference** [1] - 57:25
**referenced** [4] - 12:19,
36:23, 41:9, 74:15
**references** [1] - 60:21
**referencing** [1] - 12:4
**referred** [1] - 16:1
**refers** [1] - 25:18
**refine** [1] - 69:11
**refined** [1] - 70:7
**reflected** [1] - 81:14
**refused** [1] - 56:24
**regarding** [5] - 18:24,
23:9, 43:15, 84:9,
86:7
**reinforced** [7] - 44:22,
44:24, 49:19, 49:22,
49:24, 50:3, 50:6
**relate** [1] - 82:2
**related** [5] - 8:19,
16:19, 25:9, 52:12,
52:16
**relates** [5] - 8:13,
27:14, 42:14, 44:25,
85:18
**relevance** [2] - 83:10,
84:4
**relevant** [9] - 6:12,
38:1, 77:4, 80:23,
83:12, 85:13, 86:22,
87:14, 87:18
**reliance** [4] - 28:2,
56:21, 60:3, 85:3
**relied** [3] - 58:10,
60:23, 82:13
**relies** [2] - 61:6, 84:25
**rely** [4] - 63:7, 70:10,
70:25, 72:17

**relying** [11] - 27:19,
56:11, 56:14, 60:8,
61:1, 61:3, 68:16,
68:20, 72:3, 83:21,
88:18
**remained** [1] - 55:19
**remembering** [1] -
78:3
**removed** [1] - 87:7
**repeated** [2] - 7:1,
7:17
**reply** [2] - 19:22, 63:4
**report** [47] - 4:21,
10:7, 10:14, 10:17,
13:16, 14:8, 19:15,
20:5, 20:7, 20:23,
21:6, 22:5, 25:14,
26:2, 26:25, 27:20,
28:1, 28:15, 29:4,
29:16, 30:13, 31:19,
33:25, 35:14, 35:22,
36:2, 42:22, 45:18,
46:7, 48:13, 48:22,
49:5, 50:8, 51:5,
53:8, 55:25, 56:11,
57:15, 58:2, 58:3,
60:21, 62:11, 63:16,
68:15, 69:2, 69:5,
87:22
**reported** [1] - 93:7
**reporter** [2] - 24:24,
90:20
**Reporter** [2] - 93:5,
93:6
**reports** [4] - 7:20,
14:15, 79:15, 90:13
**represented** [1] -
30:24
**requests** [3] - 74:24,
83:3, 85:15
**require** [1] - 31:9
**required** [5] - 38:15,
67:4, 75:9, 75:10,
85:12
**requirements** [1] -
48:16
**requires** [2] - 27:2,
42:3
**requiring** [3] - 12:24,
12:25, 26:14
**reserved** [6] - 11:3,
11:12, 11:17, 15:23,
19:7, 30:17
**reserving** [1] - 16:5
**resolve** [1] - 16:11
**respect** [13] - 10:25,
15:8, 15:11, 19:24,
24:3, 24:5, 36:15,
37:13, 43:5, 50:11,
51:8, 57:2, 75:10

**respond** [8] - 5:2,
19:22, 22:25, 26:8,
36:18, 41:25, 44:6,
53:21
**responded** [6] - 19:21,
20:6, 43:18, 50:9,
51:6, 56:21
**responds** [2] - 50:18,
78:16
**Response** [1] - 76:23
**response** [28] - 6:13,
15:4, 20:6, 26:9,
27:17, 28:5, 28:6,
30:6, 30:23, 31:6,
31:23, 34:12, 35:15,
36:13, 39:12, 41:13,
45:4, 47:2, 47:17,
49:7, 51:9, 51:20,
51:25, 63:18, 70:18,
75:24, 85:25, 86:6
**responses** [1] - 76:21
**responsive** [2] -
19:13, 74:19
**rest** [1] - 38:16
**restraint** [1] - 14:22
**result** [1] - 87:20
**resume** [1] - 91:5
**retain** [1] - 40:21
**rewriting** [1] - 27:5
**RICHARD** [1] - 1:19
**Richard** [1] - 3:16
**RICHARDS** [1] - 1:16
**Richards** [1] - 3:14
**rigorous** [1] - 48:16
**Rodger** [2] - 4:6, 4:7
**RODGER** [1] - 2:3
**role** [1] - 82:21
**routinely** [1] - 23:21
**ruby** [5] - 56:7, 64:25,
78:5, 80:17, 90:2
**Ruby** [1] - 65:11
**rudimentary** [1] -
65:20
**rule** [1] - 67:7
**rules** [2] - 67:1, 67:3
**ruling** [3] - 11:23,
12:1, 24:18

## S

**sake** [1] - 91:6
**satisfying** [1] - 70:17
**save** [1] - 14:13
**saw** [9] - 10:5, 39:25,
42:22, 50:7, 51:4,
56:11, 60:1, 76:3,
77:25
**schedule** [1] - 7:18
**scheduling** [2] - 7:2,

85:12
**SCHOENBAUM** [2] -
1:16, 3:12
**Schoenbaum** [1] -
3:13
**SEALED** [1] - 93:17
**second** [4] - 23:7,
52:17, 60:2, 65:14
**Second** [1] - 76:23
**secondly** [2] - 28:19,
40:17
**seconds** [1] - 53:25
**section** [2] - 42:10,
42:13
**see** [18] - 6:24, 20:2,
22:5, 27:20, 34:1,
36:13, 37:12, 45:18,
55:24, 57:17, 65:7,
70:23, 79:7, 83:18,
84:24, 85:2, 86:1,
89:15
**seeing** [3] - 36:22,
42:21, 63:5
**seek** [4] - 10:3, 10:4,
12:14, 79:20
**seeking** [1] - 74:24
**seem** [2] - 13:1, 14:6
**sends** [1] - 33:21
**sense** [5] - 5:14,
36:11, 82:7
**sent** [1] - 33:10
**sentence** [3] - 29:22,
37:7, 81:9
**separate** [12] - 25:20,
26:1, 27:3, 27:12,
29:24, 30:3, 31:10,
31:16, 33:14, 37:6,
37:11, 59:13
**separately** [4] - 7:13,
26:15, 28:10, 61:12
**serve** [2] - 74:23,
85:15
**served** [17] - 16:23,
17:2, 17:6, 18:15,
18:17, 18:20, 46:19,
53:8, 55:21, 71:4,
73:12, 73:23, 84:5,
84:8, 86:6, 86:11,
86:12
**set** [4] - 17:8, 26:23,
72:4, 89:14
**setting** [4] - 59:17,
63:3, 83:3, 90:15
**Setting** [1] - 34:6
**settings** [1] - 44:2
**seven** [2] - 63:4, 71:16
**several** [5] - 14:4,
22:3, 33:1, 79:25,
82:12
**several-page** [1] -

14:4
**severe** [1] - 7:21
**shall** [1] - 67:9
**share** [1] - 44:17
**ships** [1] - 35:6
**short** [1] - 81:4
**Shorthand** [2] - 93:5,
93:6
**shorthand** [2] - 93:7,
93:13
**shortly** [1] - 40:1
**show** [13] - 6:8, 27:23,
32:21, 48:18, 58:25,
65:1, 70:25, 77:16,
77:17, 77:20, 78:17,
78:18, 90:5
**showed** [2] - 35:19,
75:13
**showing** [4] - 66:1,
67:20, 69:25, 73:8
**shown** [5] - 35:14,
35:16, 45:6, 69:2,
69:5
**shows** [2] - 65:21,
65:23, 69:15
**side** [4] - 5:1, 26:23,
47:1, 54:23
**SIGNED** [1] - 93:17
**silent** [1] - 56:4
**similar** [5] - 33:6,
47:4, 47:5, 50:11,
66:21
**similarly** [2] - 19:24,
76:11
**simply** [4] - 7:11, 34:8,
35:21, 48:13
**single** [1] - 32:8
**sitting** [3] - 9:19, 62:3,
84:18
**situations** [1] - 22:2
**six** [1] - 5:7
**sixth** [2] - 46:4, 49:1
**skill** [2] - 25:15, 25:23
**skipping** [1] - 48:20
**skips** [1] - 48:16
**Skype** [1] - 91:19
**slightly** [1] - 46:24
**small** [1] - 39:11
**SMITH** [3] - 2:3, 4:5,
4:13
**Smith** [3] - 4:6, 4:7,
4:12
**so-called** [1] - 5:24
**software** [1] - 40:13
**sold** [1] - 55:17
**sole** [1] - 64:1
**someone** [3] - 34:22,
75:20, 76:15
**sometimes** [4] -
37:10, 64:7, 88:5

**somewhat** [1] - 25:9
**somewhere** [1] - 81:7
**soonest** [1] - 25:3
**sorry** [10] - 11:6, 18:7, 20:24, 38:23, 40:19, 43:13, 58:21, 65:13, 72:22, 80:5
**sort** [1] - 74:10
**sought** [3] - 43:21, 44:8, 47:10
**SPEAKER** [2] - 3:6, 92:20
**specific** [4] - 22:20, 42:25, 59:3, 68:3
**specifically** [10] - 9:1, 9:5, 13:3, 16:4, 20:13, 23:4, 23:25, 66:14, 74:24, 83:17
**specification** [3] - 25:19, 29:5, 30:16
**specificity** [2] - 56:3, 58:14
**Speedbudget** [1] - 93:22
**spell** [1] - 66:15
**spoliation** [2] - 87:10, 87:19
**spool** [1] - 34:2
**ss** [1] - 93:2
**standard** [5] - 6:6, 37:17, 48:17, 58:20, 59:19
**start** [6] - 5:21, 6:18, 7:8, 8:9, 15:18, 91:20
**started** [3] - 28:11, 64:2, 67:21
**starting** [3] - 3:10, 3:25, 4:3
**STATE** [1] - 93:2
**state** [1] - 28:20
**statement** [3] - 35:1, 37:14, 45:18
**STATES** [1] - 1:1
**stay** [1] - 21:6
**Stenotype** [1] - 93:7
**step** [2] - 41:7, 48:20
**still** [6] - 12:16, 13:10, 13:15, 21:13, 63:25, 89:1
**stop** [5] - 14:24, 36:18, 49:10, 82:2, 87:25
**straight** [1] - 48:20
**strike** [10] - 4:20, 4:22, 5:25, 6:19, 17:25, 20:22, 21:8, 21:16, 22:18, 30:1
**STRIKE** [3] - 1:9, 1:11, 93:16

**struck** [7] - 13:15, 27:25, 49:9, 60:14, 64:13, 86:20, 87:23
**structure** [2] - 39:4, 77:2
**struggled** [1] - 28:4
**stuck** [1] - 30:19
**stuff** [2] - 63:23, 64:6
**subject** [8] - 55:1, 66:23, 67:16, 69:6, 71:1, 72:12, 83:3, 83:5
**submit** [2] - 9:16, 12:6
**submitted** [2] - 19:11, 25:14
**subpoena** [3] - 84:6, 84:8, 86:13
**subsequent** [4] - 11:1, 29:15, 69:13, 69:22
**sufficient** [2] - 66:13, 66:25
**suggest** [2] - 21:16, 37:3
**suggested** [1] - 67:25
**summary** [31] - 9:8, 11:19, 11:24, 13:23, 14:15, 14:18, 15:2, 15:5, 19:12, 19:20, 20:12, 20:16, 20:18, 27:17, 27:21, 29:1, 29:12, 31:7, 32:11, 35:15, 36:2, 39:13, 42:23, 43:2, 60:5, 63:20, 70:9, 84:24, 86:16, 87:22, 89:16
**summer** [1] - 69:19
**supplemental** [8] - 16:23, 18:16, 19:2, 55:20, 57:25, 65:6, 71:4, 76:20
**Supplemental** [1] - 76:23
**supplementation** [1] - 23:3
**supplementing** [3] - 17:3, 18:22, 56:8
**supplied** [1] - 57:24
**support** [4] - 35:10, 58:15, 59:3, 85:13
**supporting** [1] - 86:17
**supports** [2] - 48:9, 68:2
**supposedly** [2] - 64:3, 82:15
**surprise** [3] - 8:4, 22:4, 48:18
**surrounding** [1] - 67:11
**SUTCLIFFE** [1] - 1:21
**Sutcliffe** [1] - 3:18

# T

**table** [1] - 68:11
**talks** [2] - 44:18, 81:9
**target** [1] - 60:15
**team** [1] - 89:11
**teleconference** [2] - 1:13, 3:3
**ten** [2] - 8:25, 9:16
**term** [44] - 8:13, 8:15, 8:18, 8:19, 9:11, 9:18, 9:24, 10:2, 10:13, 11:19, 13:6, 13:25, 14:6, 15:19, 16:4, 16:16, 16:17, 16:19, 17:8, 17:9, 17:10, 17:19, 17:25, 19:15, 20:13, 20:14, 20:21, 23:11, 24:4, 24:6, 25:9, 26:16, 26:21, 28:11, 28:12, 29:25, 31:5, 32:18, 32:20, 32:21, 32:24, 44:21
**terms** [29] - 8:23, 8:25, 9:2, 9:3, 9:4, 9:6, 9:17, 9:21, 10:9, 10:12, 11:14, 11:17, 11:23, 12:24, 15:23, 16:7, 16:8, 16:13, 33:2, 44:15, 46:24, 49:6, 49:17, 52:16, 62:8, 73:1, 74:9, 86:23
**test** [3] - 6:10, 35:4, 40:7
**testified** [4] - 83:9, 83:13, 83:16, 85:23
**testimony** [12] - 17:5, 18:19, 23:5, 23:13, 23:14, 28:24, 50:22, 50:23, 57:24, 74:7, 74:14, 87:12
**testing** [2] - 35:3, 90:12
**tests** [2] - 33:19, 36:6
**Texas** [1] - 67:7
**text** [1] - 91:18
**THE** [78] - 1:1, 1:2, 3:1, 3:8, 3:22, 4:11, 4:18, 5:11, 5:16, 6:13, 6:17, 10:22, 11:10, 12:2, 12:18, 13:17, 15:1, 15:12, 18:10, 20:22, 21:1, 21:4, 22:10, 22:23, 24:12, 28:3, 29:17, 30:8, 30:19, 31:12, 32:15, 36:20, 37:23,

40:18, 41:6, 41:10, 41:24, 43:8, 43:16, 44:10, 49:12, 53:19, 54:20, 58:21, 61:7, 61:13, 64:14, 64:20, 65:13, 66:5, 66:9, 66:13, 68:6, 71:7, 71:14, 71:21, 72:22, 73:20, 74:1, 74:8, 74:18, 75:25, 77:8, 77:23, 78:6, 79:7, 80:5, 80:13, 80:25, 82:4, 88:2, 88:24, 90:17, 91:13, 91:17, 92:5, 92:15, 92:22
**theirs** [1] - 48:9
**theme** [1] - 7:1
**themselves** [2] - 42:8, 42:18
**theories** [6] - 7:9, 46:10, 46:15, 52:21, 62:8, 62:13
**theory** [38] - 18:7, 22:6, 23:12, 23:18, 24:1, 27:19, 35:14, 40:16, 40:23, 42:6, 45:10, 51:6, 53:17, 57:9, 57:16, 58:15, 58:23, 59:3, 59:17, 59:22, 60:8, 60:12, 60:24, 62:12, 63:5, 63:16, 68:4, 70:20, 74:25, 77:9, 79:5, 81:16, 81:21, 83:11, 84:23, 87:20, 89:10, 89:21
**they've** [5] - 14:17, 14:20, 45:4, 49:4, 57:3
**third** [6] - 42:3, 42:8, 42:14, 42:20, 64:7, 76:20
**thread** [1] - 69:25
**three** [5] - 17:22, 44:15, 48:11, 66:5, 74:18
**threw** [3] - 10:16, 46:6
**throughout** [3] - 38:20, 67:17, 77:18
**throw** [1] - 48:13
**throwing** [1] - 36:1
**thrown** [1] - 63:16
**tie** [1] - 61:11
**timely** [3] - 64:4, 86:3, 88:6
**TO** [3] - 1:9, 1:11, 93:16
**today** [9] - 3:21, 4:12, 6:24, 19:8, 25:2, 32:5, 34:6, 61:1,

92:18
**together** [25] - 7:17, 7:20, 10:16, 25:12, 25:17, 25:21, 25:24, 26:1, 27:1, 27:4, 27:12, 28:22, 29:9, 31:17, 31:19, 31:22, 32:3, 32:4, 32:6, 44:15, 45:2, 52:15, 59:12, 61:11, 64:11
**took** [2] - 57:8, 89:8, 89:18
**top** [1] - 37:12
**topic** [1] - 33:7
**touch** [2] - 7:14, 8:7
**tracking** [1] - 15:13
**transcript** [5] - 12:19, 12:21, 16:3, 93:12, 93:14
**TRANSCRIPT** [1] - 1:9
**transitioned** [1] - 82:21
**tremendous** [1] - 5:18
**tried** [9] - 9:18, 10:14, 12:8, 12:17, 24:6, 46:21, 49:4, 59:11, 60:20
**tries** [1] - 35:1
**troubling** [1] - 60:4
**true** [4] - 18:13, 35:4, 50:4, 93:15
**try** [6] - 8:12, 11:10, 44:14, 48:4, 63:18, 81:4
**trying** [9] - 7:19, 10:6, 14:13, 14:22, 27:5, 27:11, 36:10, 48:21, 78:18
**TUNNELL** [1] - 2:2
**turn** [4] - 6:18, 22:19, 36:21, 61:15
**turned** [1] - 56:17
**twice** [1] - 56:9
**twist** [1] - 36:10
**two** [49] - 12:15, 26:14, 27:2, 28:10, 29:8, 31:10, 31:20, 32:5, 37:22, 41:2, 41:7, 47:7, 52:8, 56:4, 56:6, 56:12, 56:14, 56:16, 56:24, 56:25, 57:2, 57:18, 57:21, 58:3, 58:7, 58:12, 59:5, 60:21, 60:22, 61:17, 62:12, 62:13, 62:17, 63:9, 65:16, 65:17, 65:20, 65:24, 66:15, 72:3, 73:15, 74:11, 76:12, 78:8, 80:2, 80:8,

88:20, 88:22
**two-prong** [1] - 12:15
**typed** [1] - 93:13
**typewritten** [1] - 93:15

## U

**U.S** [1] - 48:1
**U.S.M.J** [1] - 1:12
**Uberto** [1] - 3:17
**UBERTO** [1] - 1:19
**unable** [1] - 52:21
**under** [11] - 13:25,
22:6, 27:16, 35:8,
36:23, 48:14, 54:24,
55:7, 67:8, 77:9,
81:11
**underlying** [3] - 38:22,
41:14, 43:25
**understood** [2] -
24:12, 29:7
**unduly** [1] - 22:9
**unfair** [1] - 71:22
**unidentified** [1] -
56:14
**UNIDENTIFIED** [2] -
3:6, 92:20
**UNITED** [1] - 1:1
**unless** [2] - 14:24,
54:19
**unrelated** [1] - 52:9
**up** [27] - 7:17, 13:9,
14:13, 21:25, 25:2,
27:20, 29:18, 32:21,
35:15, 35:22, 36:2,
36:9, 37:2, 45:10,
46:15, 53:15, 54:5,
55:19, 57:23, 58:1,
61:24, 65:21, 65:23,
75:16, 78:25, 91:1,
92:16
**update** [1] - 74:2
**updated** [1] - 74:6
**user** [3] - 42:4, 44:1,
44:2
**Users** [1] - 37:1
**users** [1] - 40:25
**uses** [4] - 6:8, 19:17,
40:7, 49:24

## V

**vague** [1] - 55:23
**vast** [1] - 41:22
**ventures** [3] - 47:25,
52:1, 52:18
**version** [1] - 71:18
**versus** [1] - 3:4

**via** [1] - 1:12
**video** [9] - 61:4, 74:17,
85:3, 88:13, 88:17,
88:22, 89:5, 90:5,
91:2
**view** [10] - 8:15, 10:1,
10:17, 12:1, 12:11,
21:21, 24:10, 31:8,
47:22, 48:10
**views** [1] - 47:20
**vs** [2] - 1:5, 93:10

## W

**waived** [2] - 12:12,
13:15
**walk** [2] - 7:14, 87:16
**warner** [1] - 93:4
**Warner** [1] - 93:21
**warping** [1] - 30:22
**week** [1] - 71:16
**weighs** [1] - 64:12
**welcome** [2] - 3:23,
4:19
**whereas** [1] - 40:21
**whichever** [1] - 5:9
**white** [1] - 66:19
**whole** [10] - 5:1, 9:10,
13:12, 42:10, 59:17,
60:24, 63:17, 87:11,
89:14, 90:13
**WINGFIELD** [44] - 2:5,
4:16, 5:13, 6:15,
15:16, 18:14, 20:24,
21:3, 21:9, 22:21,
28:7, 30:5, 31:14,
37:25, 41:4, 41:8,
41:13, 43:13, 43:17,
49:16, 64:18, 64:23,
65:18, 66:7, 66:11,
66:20, 68:25, 71:11,
71:19, 71:23, 73:10,
73:22, 74:5, 74:13,
75:2, 76:8, 77:13,
78:4, 78:15, 79:16,
80:10, 80:15, 91:14,
92:12
**Wingfield** [37] - 4:9,
4:13, 4:17, 5:11,
6:14, 15:14, 23:16,
24:13, 28:4, 29:17,
30:2, 30:14, 30:24,
31:12, 36:19, 36:22,
37:24, 42:11, 45:22,
49:15, 53:20, 54:5,
54:12, 61:15, 64:16,
65:13, 81:6, 81:19,
82:14, 83:1, 85:5,
87:3, 88:13, 89:22,

91:2, 91:13, 92:10
**wingfield** [2] - 5:21,
22:23
**withdraw** [2] - 21:7,
56:24
**withdrawing** [1] -
56:21
**withdrew** [1] - 56:23
**withheld** [4] - 83:25,
85:8, 87:1, 87:2
**withholding** [3] - 7:7,
86:22, 90:16
**witness** [3] - 50:22,
86:15, 87:13
**witnesses** [6] - 18:4,
36:5, 36:6, 50:24,
53:5, 84:17
**word** [3] - 20:15,
22:19, 39:19
**worded** [1] - 76:11
**words** [3] - 48:6,
71:13, 79:18
**works** [2] - 91:18,
92:13
**worse** [3] - 26:20,
63:22, 86:25
**worst** [1] - 60:25
**written** [1] - 75:19

## X

**X5** [1] - 37:8

## Y

**year** [1] - 46:19